Hambrick *vs.* Crawford.

THOMAS HAMBRICK, plaintiff in error, *vs.* THOMAS S. CRAW-
FORD, defendant in error.

1. That a defendant was not served with process, had no notice of the suit,
   did not appear, nor authorize counsel to appear for him; that he was but a
   surety on the debt, and that the creditor, after judgment, granted the prin-
   cipal indulgence for a consideration and thereby discharged the surety;
   that the creditor failed to notify the administrator of a co-security, accord-
   ing to law, so that the estate was distributed without knowledge by the ad-
   ministrator that this debt was a charge upon the same, whereby the surety
   was injured in his right to contribution; and that the judgment itself was
   finally set aside, are defenses available to the surety, after levy upon his
   property, by affidavit of illegality, and if they are all known to him at the
   time of filing such an affidavit, those of them which, without a good
   legal excuse, he omits to set up therein are gone, and cannot, after the ille-
   gality is overruled, be urged in resistance to the execution, either by a sec-
   ond affidavit of illegality or by bill for injunction in equity.

2. With a good legal excuse for leaving the omitted defenses out of his first
   affidavit, the surety may present them in a second (setting forth therein his
   excuse.) He cannot be denied a remedy expressly given by statute, by a
   rule of court to the contrary, nor can he be obliged to resort to a court of
   equity to have his excuse adjudicated.

5. That counsel advised that it was useless or improper to embrace the omit-
   ted grounds of illegality, and advised also that the included ground was
   sufficient in law, is not a good excuse for leaving out the omitted grounds,
   though the counsel was mistaken in his opinion.

4. Judgment in favor of an administrator, rendered on a contract with him,
   may be collected by him after his dismission; especially if objection be
   urged by no one but the judgment debtor himself.

5. On the hearing of a motion for injunction at chambers, it is not the right
   of defendant to have a demurrer to the bill for want of equity heard before
   presenting other defenses upon which he means to rely. The judge may
   possess himself of the whole case from both parties, and then mature his
   decision; in rendering which, he should first dispose of the demurrer.
   The defendant being called on to show cause against the application for in-
   junction, is entitled to show as much cause as he can, but not to cut up the
   proceeding into several trials and judgments.

Injunction.   Illegality.   Attorney.   Practice in the Supe-
rior Court.   Before Jude HALL.   Henry County.   At Cham-
bers.   June 5th, 1875.

Crawford filed his bill against Hambrick making in sub-
stance, the following case:

Hambrick *vs.* Crawford.

On January 12th, 1856, he became security on a note given to defendant, as administrator of Sarah James by James F. Johnson, for $1,675 00, in consideration of the purchase of certain slaves. James F. Johnson was then solvent. The name of J. H. Johnson, the brother of the principal, was also signed to said note as security in advance of complainant's. He was then perfectly solvent. On April 9th, 1859, a payment of $73 48 was made thereon. Hambrick, as administrator, brought suit on said note to the fall term of the superior court of Clayton county. Complainant was ignorant of the fact that the defendant was not then the administrator of Sarah James, he having been discharged from such trust on December 7th, 1857. At the May term, 1860, of Clayton court, James F. Johnson, the principal, who was also an attorney at law, confessed judgment for the defendants to said suit, although he had no authority so to do from complainant. Complainant had no knowledge that any such suit had been instituted against him, never having been served therein; but he has been informed since the rendition of said judgment, that said Johnson acknowledged service for the defendants. This was also without authority from complainant. An appeal was taken from said judgment, and the case continued from term to term until May, 1864, when said Johnson again entered a confession. This was also without the authority of the complainant. In the summer of 1864 defendant came to the house of complainant and requested him to point out property of the principal out of which the amount of said judgment could be collected by levy and sale. This complainant was about to do, and actually accompanied him and the sheriff to Jonesboro for this purpose, but there Hambrick, in consideration of the payment to him of $100 00 by Johnson, agreed to indulge him. This was without the knowledge or consent of complainant. This indulgence was continued until after the close of the late war when nearly all the property of the principal had been lost or destroyed. In the year 1866, complainant's co-obligor departed this life and L. G. Johnson administered on his estate. Notice to creditors

to present their claims was duly given, but defendant failed to present his, thereby allowing the estate of said Johnson to be paid to debts of inferior dignity, and to be distributed among his heirs-at-law.

The defendant has settled, as administrator, with all the heirs-at-law of Sarah James, except one, upon the basis that the debt which he is now seeking to collect, was worthless. Therefore he is not entitled to collect anything from complainant. But he has levied upon complainant's lands, wherefore he prays the writ of injunction, etc.

Complainant subsequently amended his bill by setting forth the following facts: At the September term, 1869, of the superior court of Clayton county, said judgment was vacated on the motion of James F. Johnson, on the ground that the consideration of the same was slaves. Thus matters stood until September, 1873, when the defendant caused a levy to be made upon the property of complainant. He at once employed counsel, who advised him that under the recent decisions of the supreme court in the cases of *Prescott vs. Bennett et al.*, and *Tison, administrator, vs. McAfee et al.*, as more than three years had elapsed since said vacating order was rendered, said judgment was null and void, and that the proper mode of availing himself of this defense was by affidavit of illegality. Complainant fully informed his said counsel as to the indulgence which the defendant had given to Johnson, as heretofore set forth, but was advised that it was unnecessary to make any separate defense of that character to a judgment which had been vacated as to all the defendants. Relying upon this advice, complainant filed his affidavit of illegality, setting up the fact that the judgment had been vacated, but said defense has been overruled by the supreme court. Complainant fears that under the strict rules of pleadings applicable to a second affidavit of illegality, that the same would be dismissed if he were now to set up in that form the indulgence to Johnson, and the other defenses hereinbefore indicated, as a discharge to him, as they were all known to him at the time his first affidavit was filed. He

was misled by a mistake of his counsel as to the law, and the latter was misled by decisions of the supreme court; wherefore he prays the interposition of a court of equity.

The defendant demurred to and answered the bill. The bill and answer, respectively, were supported by numerous affidavits. The answer and affidavits are omitted here as immaterial.

When the hearing of the motion for injunction came on the defendant insisted that his demurrer should first be disposed of. This the court refused, but required the defendant to submit all of his defense together. To this ruling the defendant excepted.

After argment had, the injunction was ordered to issue and defendant excepted.

PEEPLES & HOWELL; J. M. HAMBRICK, for plaintiff in error.

SPEER & STEWART; JOHN L. DOYAL, for defendant.

BLECKLEY, Judge.

The notes of decision, as read from the bench, and set out above, present very fully the views of the court on the several points embraced in this case.

The remedy by affidavit of illegality was adequate and ample, if the defendant had used it, to the full extent, when he had recourse to it. The mistake of his counsel in confining the affidavit to one ground only, which proved insufficient, cannot be recognized as a good excuse for omitting the other grounds. If the mistakes of counsel in their professional opinions, acted upon in the conduct of litigation, were cause for renewing or continuing the litigation after judgment, there would be no end to anything. In the nature of things, the risk of such mistakes must be incurred, and there is no relief against their consequences. Nor is the matter, in a legal or judicial aspect, the least altered by the fact that the given mistake may have been committed in following and re-

Hambrick *vs.* Crawford.

lying upon unsound judicial decisions made in previous cases of like kind. The books are full of unsafe precedents. The two decisions accepted by counsel as a guide in this case were not concurred in by a full bench, and he had that much to warn him of their mutability. But did they prove unsound? or were they varied or departed from? Rather, were they not followed and applied in deciding the very case which the counsel made under them? See 50*th Georgia Reports*, 266, 279, 582; 53*d Ibid.*, 352.

All the matters set out in the bill as reasons for arresting the enforcement of the execution against the complainant's property, would be as available, at law, by affidavit of illegality, as in equity, by injunction. In so far as they are good at all, they are matters of plain legal right, though which of them are good and which not we do not determine. If there had been a sufficient excuse for leaving them out of the affidavit of illegality which was filed, a second affidavit could have been resorted to; for no suitor is compelled to appear on the equity side of the court: Code, section 3082; and when an execution is proceeding illegally by levy upon property, the remedy by affidavit of illegality is given in all cases: Code, section 3664. The rule of court which declares that no second affidavit shall be received, is to be construed as limited by these broad provisions of the Code. Generally, a second affidavit cannot be received, nor should it be. But where the grounds it alleges were not embraced in the first, and were left out without any fault, negligence, error or oversight of the party or his counsel, and it so appears on the face of the second affidavit, it would be a clear violation of the Code to deny this remedy and force the party into equity.

Judgment reversed.