JESSE E. WHITAKER v. JAMES N. SMITH.

*Laborer's Lien— Overseer not "Laborer."*

An overseer is not entitled to a laborer's lien, for his wages, upon the crop or land of his employer over which he has superintendence.

CIVIL ACTION tried at Spring Term, 1879, of HALIFAX Superior Court, before *Eure, J.*

The opinion contains the facts. His Honor gave judgment for the sum claimed by plaintiff as due for services rendered as a farm overseer, but held that he had no lien on the crops, &c., of defendant to secure payment of the judgment. From which ruling the plaintiff appealed.

*Mr. J. H. Flemming,* for plaintiff.

*Mr. Thos. N. Hill,* for defendant :

Commented upon the ruling in *Wray* v. *Harris,* 77 N. C., 77, and maintained that under the constitution and acts of assembly, overseers were not the objects of the benefits conferred. An overseer is simply an agent. *Smith* v. *Cameron,* 11 Ire., 572.

ASHE, J. This was an action to recover of the defendant services rendered by the plaintiff as overseer during the year 1877, and to enforce what is claimed to be a laborer's lien upon the crops, stock, farming utensils, and plantation of the defendant. A document was filed with the clerk of the superior court of Halifax county, purporting to be a notice of lien which is as follows:

"Know all men by these presents that I, Jesse E. Whitaker, of the county of Halifax and state of North Carolina, commenced work by verbal contract with James N. Smith, on the first day of January, 1877, as overseer and farm su-

perintendent at the rate of five hundred dollars per year, and worked as per contract until the first day of January, 1878; that said Smith is indebted to me for said services in the sum of five hundred dollars, no part or portion thereof has been paid. I file this as my lien against the crops raised, and the stock, farming utensils used on the river farm of the said Smith, and against the lands of said Smith, that is to say, his river plantation whereon I performed said services the said year 1877. Witness my hand and seal, this 5th of January, 1878.

(Signed) J. E. WHITAKER, [seal.]"

The facts of the case were submitted to the court as upon a case agreed, and among other things it was submitted that "if the court shall be of opinion either that the plaintiff has no lien on said land or crops, or having had one, lost it by failing to comply with the statute, it will so declare." The court held that the plaintiff had no lien upon the crops and other property of the defendant, from which judgment the plaintiff appealed to this court.

And the only question presented by the appeal is whether an overseer is entitled to a laborer's lien for his wages upon the crops, stock, &c., of his employer, and also upon the plantation over which he had superintendence.

In article fourteen section four of the constitution, it is provided that the general assembly shall provide by proper legislation for giving to mechanics and laborers an adequate lien on the subject matter of their labor; and in pursuance of the injunction of the constitution, the legislature passed the act of 1868–'69, ch. 117, entitled "an act to create a mechanics' and laborers' lien" and as amendatory of the same the act of 1870, ch. 206, entitled "an act for the protection of mechanics and other laborers, materials, &c.

A very large proportion of the laboring population of the state had just recently been released from thraldom and thrown upon their own resources, perfectly ignorant of the

common business transactions of social life, and this provision of the constitution and the acts passed to carry it into effect, were intended to give protection to that class of persons who were totally dependent upon their manual toil for subsistence. The law was designed exclusively for mechanics and laborers.

· Who then was a laborer in the meaning of these acts and the constitution ?

Words in a constitution or statute which have a technical meaning are supposed to be used in that sense; but if not, then in their ordinary sense or common acceptation. Worcester defines a laborer to be one who labors, one regularly employed at some hard work; and Webster's definition is, one who labors in a toilsome occupation, one who does work that requires little skill, as distinguished from an artisan. In a Georgia case, *Adams* v. *Goodrich,* 55 Ga., 335, a laborer was held to be one who performs *manual* labor. In Pennsylvania an action was tried involving the construction of a statute of that state to prevent the wages of laborers from being liable to attachment in the hands of their employers; and the court decided that the word "laborer" used in the statute meant manual *laborer* by profession and occupation. *Heebner* v. *Chave,* Pa. St. Rep., 117. And in another Pennsylvania case the question arose whether an engineer on a railroad was a laborer within the meaning of a statute of that state which gave a lien to contractors, laborers, and workmen upon railroads and other works and property of public corporations; and the court held that he was not within the purview of the act, that a laborer was one who toils, who is dependent upon his *manual* labor for his subsistence. *R. R. Co.* v. *Leuffer,* 8 Pa. St. Rep., 168. In the common use of the word, we mean one who toils, one who labors with his hands. But an overseer is an agent, a superintendent, a sort of "*alter ego.*" His business is not to labor but to oversee those who do work in subjection to his authority. He might

in special cases unite both capacities, and be both laborer and overseer; but in this case he was only overseer. He so describes himself in his pretended notice of lien, and it is expressly stated in the case' as made up for this court, that he did not perform any labor except to supervise and superintend the farm and laborers. Such a person does not come within the meaning of the constitution or acts of the legislature giving protection to laborers.

There is no error. Let this be certified, &c.

No error.                                                  Affirmed.