------------------

TOMMEY and others *v.* SPARTANBURG & ASHEVILLE R. Co. and others.*

*(Circuit Court, W. D. North Carolina.   ——, 1881.)*

1. FORECLOSURE OF MORTGAGE—PRIORITY OF LIEN.

Claims of contractors and laborers for labor performed in the construction of a railroad subsequent to the execution of a mortgage on the road will not be allowed, except as postponed to the mortgage debt, and this, whether or not mechanics' or laborers' liens have been filed in the proper court.

Contracts made prior to the execution of the mortgage, and work done thereunder, create no lien superior to that of the mortgage.

Claims of contractors and laborers for labor performed in the construction of a railroad subsequent to the execution of a mortgage on the road, to secure its bonds, will not be allowed, except as postponed to the bondholders, notwithstanding the work was performed and a mechanics' or laborers' lien filed in the proper court before the registration of the mortgage in the state where the labor is performed and the lien filed.

In Equity.

This was a bill filed by complainants for themselves, and in behalf of all other holders of the "first mortgage 7 per cent. gold bonds" of the Spartanburg & Asheville Railroad,

*Reported by Thomas M. Pittman, Esq., of the Charlotte, N. C., bar.

against the Spartanburg & Asheville Railroad Company, J. B. Cleveland, and W. H. Inman, trustees named in the mortgage, and Rice & Coleman, Fry & Deal, E. Clayton, and John Garrison, creditors of the Spartanburg & Asheville Railroad, as contractors, laborers, and material men, for the foreclosure of the mortgage to secure said bonds. The defendant corporation was formed by the consolidation of the Spartanburg & Asheville Railroad Company, of South Carolina, and the Greenville & French Broad Railroad Company, of North Carolina, July 31, 1874. The stockholders of the Spartanburg & Asheville Railroad Company, August 9, 1876, adopted a resolution in regard to placing a mortgage on the road, which was followed on the same day by the adoption of a similar resolution by the board of directors. The mortgage, securing bonds to the amount of $670,000, was executed October 1, 1876, by the president affixing the seal of the company, and signing, "The Spartanburg & Asheville Railroad Company, by D. R. Duncan, President." W. K. Blake signed it as secretary and treasurer of the company, and W. H. Inman and John B. Cleveland, the trustees, also signed it and affixed their seals. Afterwards, but prior to September 28, 1878, two of the directors affixed their hands and seals. This mortgage was duly registered in Spartanburg county, South Carolina, June 20, 1877. The master finds that the mortgage was duly registered in Buncombe county, North Carolina, November 25, 1878; in Henderson county, North Carolina, November 23, 1878; in Polk county, North Carolina, November 22, 1878. Six hundred and forty-two thousand dollars of the bonds passed out of the hands of the company; $4,500 becoming the property of plaintiff V. R. Tommey. Six hundred and fifteen thousand dollars were held as collateral. The mortgage provided that the whole amount of the bonds should fall due upon default in the payment of interest for six months. Default was made, upon which this suit was brought. Fry & Deal entered into a contract with the Spartanburg & Asheville Railroad Company, June 2, 1877, to build four trestles on the line of the road in Polk county, North Carolina, and the work

was completed June 17, 1878.     Fry was a mechanic, and worked himself on the trestles, and superintended the labor. The firm furnished the materials.     They knew at the time the work was done of the existence of the mortgage.     They filed their lien in Polk county, North Carolina, August 3, 1878, for $6,335.16, and on October 16, 1878, instituted proceedings in the superior court of that county to enforce their lien. John Garrison contracted, June 2, 1877, to build " Mill Creek Trestle," which he completed about the seventeenth of February, 1878.     He filed a lien in Polk county, April 2, 1878, and began an action to enforce it, August 10, 1878.     Garrison was a mechanic, and did some of the work, but his principal labor was as a contractor, to superintend the mechanics and laborers employed under him.     T. G. Williamson was one of the engineer corps of the company, and was due $911.40 from March, 1878.     He filed his lien in Polk county, June 4, 1878.     There is a balance due Rice & Coleman for work done since October 1, 1876, of $22,935.23, from May 1, 1878. Coleman was a stockholder in the company, but was not present at the meeting which authorized the mortgage.     They knew of the making of the mortgage, and received, after October 1, 1876, about $62,000, in county bonds and cash, from the company, on this contract.     While engaged in grading the road they bought the land over which about two miles of their contract extended, and the company having neglected to have the right of way through the land condemned according to law, they assert titles to the road-bed and superstructure on their land.     E. Clayton was a stockholder of the company.     There is due him the sum of $3,316.87, for work done on the South Carolina division of the road before August, 1876.     Another contract was made with him prior to October 1, 1876, on which there is a balance due of $23,661.25 from November 1, 1877.     He was present at the meeting which authorized the mortgage, and did not vote against it.     He claims title to a portion of the road-bed and superstructure, similar to that of Rice & Coleman.     The two last-named parties claim *statutory* liens.     The commissioners of Buncombe county were stockholders, and became parties defendant.

*Chandler & Thompson, Bynum & Grier, J. H. Rion,* and *Mr. Brown,* for complainants and trustees.

*Evans, Bobo & Carlisle, Shipp & Bailey, J. H. Merriman, T. Coleman, W. J. Montgomery,* and *M. E. Carter,* for defendants.

BOND, C. J.    This is a bill filed by the mortgage trustees and the bondholders, secured by the mortgage against the defendant corporation and others, to-wit, creditors of the defendant corporation claiming mechanics' liens and statutory liens for labor done on the Spartanburg & Asheville Railroad, to foreclose the mortgage and sell the road pursuant to the terms of the mortgage.    The case is for final hearing upon the pleadings, evidence, report of the special master, and exceptions to his report.    The material facts reported by the master are not controverted, and are these:

> The Greenville & French Broad Railroad Company was incorporated by the legislature of North Carolina, February 13, 1855, and the Spartanburg & Asheville Railroad Company was incorporated by the legislature of South Carolina, February 20, 1873, and the two companies were consolidated under the name of the Spartanburg & Asheville Railroad Company, July 31, 1874, under the general laws of the two states, and the new company thus formed is clothed with all the rights which were originally conferred upon the separate companies.    The defendant company thus organized commenced to build its road from Spartanburg, in South Carolina, to Asheville, in North Carolina, and, having expended its assets, the stockholders resolved, on the ninth day of August, 1876, to issue and sell bonds to the amount of $670,000, and to secure their payment and interest on them by a mortgage upon the consolidated road.    The mortgage was duly executed by the company on the first day of October, 1876, and the bonds to the amount of $642,000 were sold or hypothecated, and came into the hands of the plaintiff holders and others for value *bona fide.*    The third section of the mortgage, which is filed as an exhibit, contains the conditions of it and the powers granted to the trustees, mortgagees thereunder.    It was not seriously contended in the argument that the defendant company had not power to make the mortgage, or that the conditions had not been broken at the commencement of this action.

The master so finds, and his report is hereby confirmed.

The defendant creditors claim that they, as contractors and laborers, have a lien upon the road prior and superior to the bondholders, and are first entitled to the proceeds of the sale of the road, if the court should decree a sale.    This is the principle question in the case.    These claimants are of two

classes: *First,* those who have filed in the proper court "mechanics' and laborers' liens;" *second,* those who have not filed such liens in the state courts, but claim a lien by statute. Of the first class are Fry & Deal, John Garrison, Rice & Coleman, and T. G. Williamson, whose claims are fully set out in the master's report. These claims, we think, ought not to be allowed, except as postponed to the mortgage debt.

It is not necessary, in our opinion, to argue whether or not these lien claims are filed under the provision of the state law. In each case the work was done and the lien filed subsequent to the execution of the mortgage; but we think the statute upon which the claims are based does not apply to railroads. Battle's Revisal, *c.* 65.* ·

No case has been cited where any court in North Carolina has held that such a lien was within the purpose or meaning of that statute, although the statute was passed in 1869–70. The act does not mention railroads as the subject of such liens, and the intimation of the supreme court of North Carolina in *Whitaker* v. *Smith,* 81 N. C. 340, is the other way. It was there held that the statute gave a lien to "mechanics and laborers" exclusively, and that an "overseer" was not a laborer, and reference made to 8 Pa. St. 168, where it is held that an engineer is not a "laborer." The first class of claimants filed their liens as contractors. They are not, in our opinion, mechanics and laborers within the meaning of the North Carolina law as held by its supreme court. The second class of creditors referred to in the master's report do not claim a lien under chapter 65, Battle's Revisal, as the other lien claimants have done, but they do claim that by virtue of chapter 26, § 48, Bat. Rev., all the debts due them, and all contracts with the corporation at the date of the execution of the mortgage, were liens prior to

*Section 1 of the statute provides that " every building built, rebuilt, repaired, or improved, together with the necessary lots on which said building may be situated, and every lot, farm, or vessel, *or any kind of property not herein enumerated,* shall be subject to a lien for the payment of all debts contracted for work done on the same, or materials furnished."—[REP.

the mortgage.* These debts, at the date of the mortgage, October 1, 1876, have been paid, except the sum of $3.316.87, due E. Clayton, with interest from August, 1876, and some smaller sums, all of which are stated in the master's report. We do not think that under that section the claimants have any lien.

We are of opinion that the statute contemplates debts already incurred and contracts executed at the time of making the mortgage.

It has been suggested to us by counsel, since the argument, that the case of *Brooks* v. *Railway Co.*, 101 U. S. 443, has an important bearing upon this case; but we think the supreme court of Iowa held, as we do now, that a railway was not a building, within the meaning of their mechanic's lien law, in *Nelson* v. *The Iowa Ry. Co.*, construing section 1855 of the Code of 1860, which resembles the North Carolina statutes, and reversed their judgment after the law was amended. So far as the claim of E. Clayton is concerned, we think the master's report must be confirmed. The land was purchased by him after the commencement of the construction of the railroad, with full knowledge that it was to pass over it, and indeed while he was constructing the railroad over it. He is in a court of equity for relief, and he must do equity. The master reports that he is not damaged and he will be allowed nothing. And the same is true of the land claimed by Rice & Coleman.

We see no reason for disturbing any of the findings of the master relating to the claims of W. H. Inman, and his report is confirmed, and a decree will be passed in accordance with this opinion.

NOTE. See *In re Kelly*, 5 FED. REP. 846

---

*The statute provides " that all debts and contracts of any corporation, prior to or at the time of the execution of any mortgage or deed of trust by such corporation, shall have a first lien upon the property, rights, and franchises of said corporation, and shall be paid off or secured before such mortgage or deed of trust shall be registered."—[REP.