CHARLES E. BLANCHARD

*vs.*

PORTLAND AND RUMFORD FALLS RAILWAY.

Cumberland.    Opinion February 25, 1895.

*Railroads. Lien. Laborer. R. S., c. 51, § 141.*

Railroads are made liable by statute (R. S., c. 52, § 141) for the wages of laborers employed by contractors for labor actually performed on the road.

*Held;* that the statute is not strictly remedial and is not to be extended or restricted in its operation beyond the fair meaning of its words.

*Held;* that one who superintends the building of bridges at an agreed compensation of seven dollars per day, keeps an account of the men's time, and makes out their pay-rolls, is not a "laborer" within the meaning of this statute.

ON EXCEPTIONS.

This was an action of assumpsit, tried by the presiding justice of the Superior Court, for Cumberland county, without the intervention of a jury, at the April Term, 1894, subject to exceptions in matters of law.

The action was brought by the plaintiff against the defendant company to recover for work done as a laborer in the construction of defendant's railroad, under R. S., c. 51, § 141.

It appeared from the bill of exceptions that the Portland and Rumford Falls Railway contracted with one Berry, to construct an extension of its line from Mechanic Falls to a connection with the Maine Central Railroad near Danville Junction. Berry made a contract with one William Hogan to build the bridges on the line, and Hogan contracted with one Fred Blanchard to build two of the bridges. The plaintiff was employed by Fred Blanchard to superintend the work on the two bridges. He had charge of the stone cutters and masons, kept the time and made out the pay-rolls. The plaintiff worked as above for eighty-nine days.

It was admitted by the defendant that the plaintiff seasonably gave the notice in writing required by the statute.

VOL. LXXXVII.    16

Upon the foregoing matter the presiding justice ruled as matter of law :

1st. That the plaintiff was a laborer within the meaning of the statute.

2nd. That he was entitled to recover against the defendant though he was employed by a sub-contractor.

The defendant took exceptions.

The statute on which the action was brought is as follows :

"Every railroad company, in making contracts for the building of its road, shall require sufficient security from the contractors for the payment of all labor thereafter performed in constructing the road by persons in their employment; and such company is liable to the laborers employed, for labor actually performed on the road, if they, within twenty days after the completion of such labor, in writing, notify its treasurer that they have not been paid by the contractors. But such liability terminates unless the laborer commences an action against the company, within six months after giving such notice."

*A. R. Savage and H. W. Oakes,* for plaintiff.

The statute by its terms protects the services of all men who actually labor on the road, whose daily toil helps build the road, whose physical efforts contribute to its physical construction. Such were the services of the plaintiff who had charge of the stone cutters and masons. An architect who makes plans and specifications, and also directs and oversees the work, is a "laborer." *Bank of Pa.* v. *Gries,* 35 Pa. St. 42 ; *Stryker* v. *Cassidy,* 76 N. Y. 50.

There is no distinction between skilled and unskilled labor, or between mere manual labor of one who supervises, directs and applies the labor of others.

The statute line seems to be drawn between "contractors" and "laborers," between employers and employed, between those who can look out for themselves and those who cannot look out for themselves.

There is no question but that the boss of a crew of stone masons would be regarded, in common parlance, as belonging

to the "laboring classes." *Balch* v. *New York & Oswego Midland Railway Co.* 46 N. Y. 520, where a laborer is characterized as "one who earns his daily bread by his toil." *Mulligan* v. *Mulligan*, 18 La. An. 20 (the case of a supervising architect) ; *Arnoldi* v. *Gouin*, 22 Grant's Ch. 314 (Can.) ; *Knight* v. *Norris*, 13 Minn. 473 ; *Mutual Ben. Life Ins. Co.* v. *Rowland*, 26 N. J. Eq. 389 ; *Capron* v. *Strout*, 11 Nev. 304 (holding that a foreman or boss of a mining gang is a laborer) ; 2 Jones on Liens, p. 321 ; *Foerder* v. *Wesner*, 56 Iowa, 157 ; 2 Wood's Ry. Law, § 295 ; *Mining Co.* v. *Cullins*, 104 U. S. 176.

Second. The plaintiff is entitled to recover against the defendant, although he was employed by a sub-contractor. The statute should be considered liberally. *Mining Co.* v. *Cullins, supra.*

It requires the railroad company to require sufficient security from the contractors. The term "contractors" is used in a broad and generic sense, embracing all who do work in the construction of the railroad by contract which requires the employment of laborers.

The Kansas statute provides for taking a bond conditioned that the contractor shall pay "all laborers, mechanics and material men, and persons who supply such contractor with provisions or goods of any kind."

Under this statute it is held that the laborers are protected whether they are employed by the contractor or by a sub-contractor or by a sub sub-contractor. *Mann* v. *Corrigan*, 28 Kan. 194 ; *Missouri, &c. Railway Co.* v. *Brown*, 14 Kan. 557.

The object of the statute is to protect the men who labor on the railroad. And in a legal sense, all men at work either for a contractor or for a sub-contractor, are in the employment of the contractor. They are at work performing his contract.

*J. W. Symonds, D. W. Snow,* and *C. S. Cook,* for defendant.

Laborer : *Wakefield* v. *Fargo*, 90 N. Y. 213 ; *Rogers* v. *R. R. Co.* 85 Maine, 372 ; *Ames* v. *Dyer*, 41 Maine, 397 ; *Wilson* v. *Whitcomb*, 100 Pa. St. 547 ; *Missouri, &c. R. R. Co.* v. *Baker*, 14 Kans. 173 ; *Same* v. *Brown*, 14 *Id.* 557.

The kind of labor to be performed must be considered. It is not work "for" the road but it is labor "on" the road to which our statute has reference. Under the former a civil engineer or a superintendent might possibly claim a lien but never under the latter. In one case the work is preparatory and non-constructive. In the other the labor is expended on, and forms the very thing to which the lien is to attach.

The interpretation of the statute claimed by the plaintiff would give a lien to the civil engineer who located the road, and prepared the specifications, and to the draughtsmen who drew the plans and profiles, a contention which is not to be considered for an instant. "Contracts" for the construction of a railroad are not made until location, specifications and plans are fully determined upon.

Second. Defendant denies that the plaintiff "is entitled to recover though he was employed by a sub-contractor."

The question here is not the doubtful one as to whether a sub-contractor has a lien, but it is the much more doubtful one as to whether the employee of a sub-contractor of a sub-contractor can recover under a statute which in terms makes no reference to sub-contractors or to the persons employed by them. Under such a statute the plaintiff must bring himself not only clearly within the spirit of the words used but technically within the exact phraseology. As in *McGugin* v. *Ohio River R. Co.* 10 S. E. Rep. 36, where it was held that under a statute giving a sub-contractor a lien, a sub-contractor of a sub-contractor had no lien. The right claimed is wholly contrary to ordinary business transactions, is not known to the common law, is entirely the creation of legislative enactment, and is limited and controlled by the words of the statute as used in their ordinary acceptation.

What the legislature did was to provide that contractors should furnish sufficient security "for the payment of all labor thereafter performed in constructing the road by persons in their employment." The contractor is the person to whom the railroad must look for protection, not the sub-contractor, and the security furnished by the contractor is for the payment of

the laborer employed by the contractor. The railroad can require no security from a sub-contractor, it makes no contract with him and it has nothing to do with, and is in no way responsible to, the persons employed by him.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, WISWELL, JJ.

WALTON, J. The decision of this cause depends upon the meaning of the word "laborers," as used in the Revised Statutes, c. 51, § 141.

That section provides, among other things, that railroad companies shall be liable to the "laborers," employed by contractors. What is the meaning of the word "laborers," as here used? Does it include one who at an agreed compensation of seven dollars a day superintends the building of bridges, keeps an account of the men's time, and makes out the pay-rolls?

We think not. A laborer, says Webster, is one who labors in a toilsome occupation; a person that does work that requires strength rather than skill, as distinguished from that of an artisan. And in the construction of statutes similar to our own, it has been held that the word "laborer" does not include a bookkeeper or a superintendent. *Wakefield* v. *Fargo,* 90 N. Y. 213. Nor a civil engineer. *Penn. & Del. Railroad Co.* v. *Leuffer,* 84 Penn. St. 168 (24 Am. Rep. 189). Nor an assistant engineer. *Brockway* v. *Innes,* 39 Mich. 47 (33 Am. Rep. 348). Nor an overseer, *Whitaker* v. *Smith,* 81 N. C. 340 (31 Am. Rep. 503). Nor one who has contracted to do a certain amount of grubbing, notwithstanding he labors with the men employed by him to do the work. *Rogers* v. *Railroad Co.* 85 Maine, 372. In the language of the business world, says Mr. Chief Justice PETERS, a laborer is one who labors with his physical powers in the service and under the direction of another for fixed wages; that this is the common meaning of the word, and hence its meaning in the statute; that while etymologically the word "laborer" may include any person who performs physical or mental labor under any circumstances, its popular meaning is much more limited.

Similar expressions are used in several of the cases cited. In Leuffer's case it is said that when we speak of laboring men, we certainly do not intend to include bookkeepers, or engineers, the value of whose services rests rather in their scientific than their physical ability ; that we intend those who are engaged, not in head, but in hand work ; that while in one sense an engineer is a laborer, so is a lawyer, or a doctor, or a banker, or a corporation officer, and yet no statistician ever classed them as such.

Again, it has been said that such and similar statutes are presumptively intended to protect a class of men who are ill-fitted to protect themselves,—men who are dependent upon the fruits of their daily toil for the daily subsistence of themselves and their families,—and that they should not be extended, by a forced construction, so as to include a class of men who are competent to take care of themselves, and need no such protection.

There is force in these suggestions. And it may not be out of place to add that the statute under consideration is not strictly remedial ; that while it confers benefits, it also imposes burdens ; that while it gives protection to one of the parties it compels the other party to pay a debt which he had no voice in contracting. The correct rule for the interpretation of such a statute is to neither extend nor restrict its operation beyond the fair meaning of the words used. To forcibly extend its operation would be unfair to one of the parties. To forcibly restrict its operation would be unfair to the other party. It is not easy to draw the line. But, taking this rule for our guide, our conclusion is that the services sued for are not within the protection of the statute. The exceptions state that the plaintiff was employed by a contractor ; that he superintended the work on two bridges ; that he had charge of the stone cutters and the masons ; and that he kept the time and made out the pay-rolls. It is immaterial whether we call him a bookkeeper, or a superintendent, or both ; for in neither capacity are his services within the protection of the statute.

*Exceptions sustained.*