EDUARDO G. ORTIZ, Plaintiff and Appellant, v. WORKMEN'S RELIEF COMMISSION, Defendant and Appellee.

No. 3961. Argued November 19, 1926.—Decided June 3, 1927.

Arjona & Arjona for the appellant. Attorney General George C. Butte and Arturo Ortiz Toro for the appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

Eduardo G. Ortiz claimed from the Workmen's Relief Commission the sum of four thousand dollars for damages suffered by him as a consequence of an accident while in the employ of the Central Boca Chica and acting within the scope of his employment.

The case was investigated twice by the Commission. In the first investigation it ruled that the claimant was not entitled to the protection of the special law on the matter, and in the second it ratified its former ruling. Ortiz appealed. to the District Court of Ponce which, after hearing the evidence, dismissed the appeal. Therefore Ortiz brought the present appeal and his counsel has filed an able brief in support of his claim.

The whole matter hinges on the following question: Was Ortiz a workman, or a clerk working in an office or commercial establishment where machines were used?

There is no doubt that Ortiz was an employee of Central Boca Chica and that he had been ordered by the manager of the central to take an inventory of all of its stock and that on October 4, 1922, he proceeded to carry out the order and while traveling in a Ford car driven by another employee of the central he met with the accident apparently without consequences, but it seems. clear that it had some afterwards.

Really the only question in controversy is the kind of employment Ortiz was engaged in and the conditions of the place where he was working. In this respect the trial

court, after carefully weighing the evidence, found that Ortiz was a clerk and that in the office where he used to work there was no machinery.

The rule applicable is to be found in section 2 of the Workmen's Accident Compensation Act of 1919, as amended in 1921, Laws of 1921, p. 472, which reads in part as follows:

"Section 2.—That the provisions of this Act shall apply to laborers injured or disabled or who lose their lives from accidents or sickness occurring because of any act or function inherent in their work or employment and while engaged therein and as a consequence thereof. Farm laborers not employed to work with machinery operated by steam, gas, electricity, animal or other mechanical power or instruments or tools the use of which can not cause serious corporal injury, domestic servants and employees engaged in clerical work, in offices and commercial establishments where machinery is not used, are excepted; . . . ."

To the question: "What was the kind of employment you had in the Central Boca Chica," asked by his own attorney, Ortiz answered: "At that time I was an intermediary between the central and the office; The Central Boca Chica which had an office in Ponce, on Vives St., and I was an intermediary in the office; I used to buy for the central, take inventories, take care of all the purchases for the central in the Playa and in several places in town, make payments and do some work in the office; that was my work."

According to the testimony of José Sánchez Parra, a witness called by Ortiz, the central had its offices in the city of Ponce and its building in the ward of Aruz or Capitanejo in the municipality of Juana Díaz, the work of Ortiz in the office consisting of keeping a book in which all purchases were entered and in typing lists, having his desk there. All of the employees used to work from eight to twelve and from half past one to half past five or six, p. m. Ortiz's salary was one hundred dollars per month. He also used to work outside of the office in buying for the central.

Testifying as a witness for the appellee, Guillermo Vivas,

manager of the central, said among other things that he had Ortiz engaged in the purchases, going out in the morning and visiting establishments to find out who sold cheapest; that he worked in the office with all the personnel; that he kept the record of the store; that he directed him to make an inventory of all the property; that the office of the central was in a rented house in Ponce, and that its properties were out in the country.

Such being the case, it must be admitted that Ortiz's work inside and outside the office and that which he was going to perform when the accident occurred are not included in what is usually performed by a workman.

*A workman,* according to the "Diccionario Razonado de Legislación y Jurisprudencia" of Escriche, is "one who works for daily wages or by the piece in house building or in farm labors." The author refers to the words Artisan, Day-laborer, Master and Handicraftsman, which, with the exception of Master, have definite and well known meanings. The master referred to by Escriche is "anyone who is skilled in any handicraft or performs it publicly, such as a tailor, a wheelwright."

In the English text of the Act the word "laborer" is used.

In vol. 5 of Words and Phrases Judicially Defined there are numerous quotations. The first is as follows:

"A laborer, as defined by Webster, is one who works at a toilsome occupation; a man who does work requiring little skill, as distinguished from an artisan; sometimes called a laboring man. Clerks, agents, cashiers of banks, and all that class of employees whose employment is associated with mental labor and skill, are not considered laborers. Every human being who follows any legitimate employment or discharges the duties of any office is, in a broad sense, a laborer. The President of the United States a Governor of a state, and the Justices of the Supreme Court are all laboring men, in the sense that they do a good deal of hard work, much of which is, indeed, attended with physical and muscular exertion; but at the same time they cannot properly be termed manual labor-

ers, either in the popular sense in which these words are understood and used, or in the sense in which the term laborers was employed in the statute giving the laborer a lien on the property of his employer. In determining whether a particular clerk or other employee is really a laborer, the character of the work he does must be taken into consideration, and he must be classified, not according to the arbitrary designation given to his calling, but with reference to the character of his services. Oliver v. Macon Hardware Co., 26 S. E. 403, 405; 98 Ga. 249; 58 Am. St. Rep. 300; McPherson v. Stroup, 28 S. E. 157, 159; 100 Ga. 228.

"A laborer is one who labors with his physical powers in the service of and under the direction of, another, for fixed wages. Blanchard v. Portland & R. F. Ry., 32 Atl. 890, 891; 87 Me. 241; Meads v. Park, 50 Atl. 706, 707; 95 Me. 527."

If the Act referred to be considered as a whole it will be seen that the minds of the legislators were confined entirely to workmen and that it was sought to protect them only. But admitting for the purpose of the appeal, in view of the wording of section 2 of the Act which we have transcribed, that according to its provisions employees who work in offices where machinery is used are also entitled to claim compensation, it will be necessary to admit that the judgment appealed from must be upheld because in the office where the plaintiff used to work there was no machinery, as decided by the district court.

It is alleged by the appellant in his brief that the conclusion of the trial court was not supported by the evidence. Really no witness testified on that particular in a concrete manner, but it is inferred from the testimony that it was a case of an ordinary office, separated from the buildings of the central, for the mental direction from it of the business, keeping accounts and doing all kinds of work in harmony with its purpose. In offices of that kind generally there is no machinery. Typewriters and similar contrivances are not the machines which the legislators had in mind. This being the case, it can not be held that the conclusion of the court was not justified. Moreover, the burden was on the plaintiff

to show that machinery was used in the office where he worked, and he failed to do so.

The fact that the plaintiff met with the accident while going to the place where he had to take the inventory, which work would compel him to go into places where machinery was used, does not change the character of his employment.

The appellant also alleges that the law refers to "offices and commercial establishments" and that the business of the central was exclusively industrial.

The word "commercial" is somewhat related to the word "establishments," but not necessarily to the word "offices." The word "office" has within the law an independent existence and comprises everything that can be included within its ample meaning. Dictionaries define "office" as "the place where a thing is done, ordered or worked," "the place used for the work of a secretary, an accountant, or similar occupations."

It does not matter that the business of a central is to manufacture sugar. It can have and usually has, separated from the buildings, as happens in this case, an office exclusively used for the management of its affairs.

Having arrived at the foregoing conclusions, it becomes unnecessary to consider the other assignment of error, namely, that the trial court erred in finding that the accident suffered by the plaintiff was not within the scope of his employment or work, or that it did not take place while engaged therein or in consequence thereof.

The judgment appealed from must be affirmed.