## THE BOSTON AND COLORADO SMELTING COMPANY v. REED.

1. APPEARANCE.

A general appearance waives irregularity in the mode of procedure adopted to obtain jurisdiction of the person.

2. RES JUDICATA—PLEADING.

The defense of *res judicata*, to be available, must be pleaded.

3. APPELLATE PRACTICE.

Objections to mere irregularities of procedure in the court below cannot be entertained if made in the first instance on appeal.

4. PLEADING—LEGAL CONCLUSION.

An averment that a certain person was a receiver is but a legal conclusion.

5. TRUST FUNDS—TRUSTEE'S LIABILITY FOR PROFITS.

The appellant bought, under order of court, ores belonging to the appellee, and for several years it held, subject at any time to the court's

orders, moneys which were the equivalent in value of the ores so purchased. It mingled these moneys with its own funds and used them indiscriminately in carrying on its own business. It was ready and prepared at all times to pay these moneys on demand. *Held*, that it must account to the appellee for the profits derived from the use of the money.

6. Same.

One holding money in trust must account for profits not only where it was his duty to make them, but also where, as a matter of fact, he has actually made them by using the fund.

### Appeal from the District Court of Lake County.

In an action pending in the district court of Lake county, brought by Clinton Reed, as plaintiff, against John C. Meagher et al., as defendants, for the purpose of establishing plaintiff's claim to an interest (alleged to be an undivided 1/4) in a mining lease upon the Felicia Grace lode, a decree was rendered on December 24, 1884, adjudging that plaintiff was the owner of an undivided 7/32 in the lease and a like share of the proceeds of ore extracted from the mine. Afterwards, and at the January term, 1890, this court affirmed that decree (14 Colo. 335).

While the case was in the district court an interlocutory writ of injunction, at the instance of plaintiff, was issued, restraining the defendants from working the mine or selling ore until the determination of the suit.

Subsequently, and on November 26, 1884, and before the trial of the action, by agreement of parties an order was entered modifying the previous restraining writ, which order covered both the ores theretofore mined and thereafter to be extracted, and gave to defendants the right to sell the same upon condition that the net proceeds of the share claimed by the plaintiff be left with the purchaser "subject to the further order of the court herein."

In pursuance of this permissive order, between December 6, 1884, and July 9, 1885, the defendants sold to the respondent herein, The Boston and Colorado Smelting Company, large quantities of ore from said mine, the defendant's share in the

net proceeds of which was paid to them, and the 7/32 thereof, which was in dispute in this action, was retained by the company, as the order required.

After the judgment was affirmed in the supreme court, and the remittitur sent down, the plaintiff in the action, on July 19, 1890, served upon the Smelting Company a notice that he would, on the 30th of July, 1890, make an application to the district court for an order upon the company to pay into court the money deposited in its hands under the said order of November 26, 1884. Under this application, on the 30th of July the court made an order decreeing that the Smelting Company forthwith furnish and file in the court a full and complete statement of account showing the amount of ore delivered by the defendants since the previous order of November, 1884, the value thereof, the amounts paid to the defendants from time to time and the royalty to the lessors, and that after deducting from the gross amount realized from such ore the cost of smelting, railroad charges and royalty, to pay into court the amount of the net proceeds of petitioner's share.

The Smelting Company, without making any objection thereto, filed in the court on August 7, 1890, its account and statement showing the net value of the 7/32 of the ore to be $17,923.53, and thereupon paid into court said amount of money (which apparently was thereafter turned over to the plaintiff), and received the following receipt signed by the judge of the court:

"OFFICE OF THE BOSTON AND COLORADO SMELTING COMPANY.

"No. 55995. ARGO, COLO., Aug. 7th, 1890.

"Received of The Boston and Colorado Smelting Company, seventeen thousand nine hundred twenty-three 53-100 dollars, in compliance with the order of the district court of the 5th judicial dist. of Colo., dated July 30, 1890, being the amount retained by The B. & C. S. Co., under and in pursuance of

the order of said district court dated Nov. 26, 1884, in the case of Clinton Reed v. John C. Meagher et al. "$17,923.53."

On the 10th of the following month plaintiff Clinton Reed, entitling his pleadings as in the above case, filed his petition, after service of notice on the Smelting Company, reciting the decree of the district court rendered in December, 1884, whereby he was adjudged to be the owner of a 7/32 interest in the said lease and a like interest in the proceeds of all ores mined therefrom, and further reciting the order of November, 1884, that the ores might be sold to the said Smelting Company, alleged that ores were so sold to it in a large amount in excess of that theretofore (on August 7th) reported by the Smelting Company, to which he claimed to be entitled.

The petition further alleged that said Smelting Company took and received the funds and the proceeds of the ore belonging to petitioner, so sold to it by the defendants, and appropriated the same to its own use; that such funds so received and appropriated by it were put into its general account and mixed with its own funds and money and became and were made part and parcel of the general funds, money, and capital stock of the Smelting Company, and were so treated and used by it, out of which the plaintiff alleged the company made large gains and profits. He therefore asks that the company be compelled to render an additional account and show what gains and profits upon such fund the company has made, and, when ascertained, to pay the same over to him.

The Smelting Company, appearing specially, filed a motion to strike the petition from the files, as well as to vacate all orders theretofore made by the court requiring it to account and pay into court the money which it had on hand claimed by the plaintiff, upon the ground that the court had no jurisdiction over the person of the respondent. This motion was overruled by the court and the Smelting Company ordered to file its answer to the petition, which thereafter it did, in which

it alleged that the account theretofore made by it was a true and just account, and set up the delivery to it by the judge of the court of the receipt (in words as hereinbefore set forth), claiming the same to be a full acquittance and discharge of said company of all demands of the plaintiff.   It denied the appropriation of the funds to its own use, and denied the mingling of the funds with its own, or the receipt of any profits therefrom.

It further alleged that it did not sustain in the said action the relation of receiver with reference to the funds in question, but acted merely and solely as a purchaser of the ore that was sold to it by the defendants in the original case under the order of the court to that effect.

Upon a hearing of the petition a judgment was rendered against the Smelting Company in favor of Reed for $4,555.66, this being equal to interest at the rate of five per cent per annum on the $17,923.53 during the time the same was in the possession of the Smelting Company.   This was evidently upon the theory, adopted by the trial court, that the company occupied a trust relation as to the fund in question, and that it made use thereof while the same was in its possession, and derived a profit therefrom.   The foregoing statement is deemed necessary that the real question now before the court may be clearly understood.   Without reference, however, to the pleadings which set up the history of the case as above summarized, the case was submitted to the court upon an agreed statement of facts, which, so far as material to the question involved here, is as follows:

" * * * On August 7, 1890, pursuant to the order of July 30, 1890, of which a copy is above set forth, the said Smelting Company paid into court, upon the receipt of the judge thereof (of which a copy is herein above set forth), the said seven thirty-seconds (7/32) of the value of said ores, amounting to $17,923.53.   During all the time, from the date of the purchase of said ores to said 7th day of August, 1890, and while the said ores, or the proceeds of the said seven thirty-seconds (7/32) thereof, were in the hands of said

Smelting Company, the said Smelting Company was carrying on the business of dealing in and smelting ores, and was using its funds in its said business and was making a profit of five per cent per annum, and no more, on all its funds invested in its said business. That the said seven thirty-seconds (7/32) of said ores became, upon the purchase thereof by said company, a part of the assets of said company, and the moneys owing therefor were then, and till August 7, 1890, remained a part of the general funds of the company, and were used by it in the transaction of its business in the same way and manner that it employed its general funds and capital from whatever source acquired.

*      *      *      *      *      *      *      *

" The said 7/32 of said ore were not paid for by the Smelting Company at the time of purchase becáuse, and solely because, of the order of the court of November 26, 1884, and because by reason of said order it could not lawfully pay out said 7/32 of the value of said ores until August 7, 1890.

" The said Smelting Company at all times subsequent to the purchase of said ores kept on hand in its treasury more than the sum of $17,923.53, and was at all times prepared and ready to comply with any order of the district court of Lake county for the payment thereof.

" Dated this 28th day of November, 1892; " and signed by the respective parties.

Mr. HUGH BUTLER, for appellant.

Messrs. TELLER, ORAHOOD & MORGAN, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

A large number of errors have been assigned, but these may be grouped for discussion here as in the argument of counsel.

1. The first point made is that it is contrary to the recognized practice in trial courts for the plaintiff to proceed against

the appellant company by a petition in the original case after final judgment. His proper course in such a case, as it is said, would have been to bring an independent action against the Smelting Company as a debtor.

Whether, had seasonable objection been properly made by the appellant to the jurisdiction of the district court thus to entertain appellee's petition in the original case, such objection should have been sustained, we are relieved of the necessity for determining; for when the appellant, as the respondent below, in obedience to the petitioner's notice of July 19, 1890, voluntarily entered its general appearance, and complied with the order of July 30th and filed its account in the original case and paid into court the petitioner's share of the proceeds of ore bought by it, this unquestionably constituted a waiver of the jurisdictional question here urged, as the subject-matter was clearly within the court's jurisdiction. Having thus once subjected itself to the court's jurisdiction, it could not, upon the second application claiming profits, object that the procedure adopted by petitioner was irregular. *N. Y. & B. Mining Co. v. Gill*, 7 Colo. 100; *U. P. Ry. Co. v. DeBusk*, 12 Colo. 294.

2. Another position taken by the appellant is that since the plaintiff, by his first application to the district court, elected to claim only the proceeds of the ore, and did not specifically ask for profits, he may not thereafter demand interest or profits, for the latter might properly be awarded upon the first application. The points made are: *first*, the issue concerning profits might have been litigated under the first application, but was not, hence, such issue was *res adjudicata* upon the second application, both as to the original fund and profits; *second*, that the election to ask only for the proceeds of the sale was a waiver of profits; *third*, to permit this second application would be to sanction a splitting up of the same cause of action into several suits.

If the rules invoked have any application to the facts of this case, appellant has waived its right thereto, for these objections were not taken below, and are now urged for the

first time upon this appeal. It was the duty of the Smelting Company, if it desired to take advantage of the objection now urged, specially to plead *res adjudicata*, to set up the estoppel, and that the same cause of action was being split up. It did not below plead such matters; but confined its objection solely to the jurisdiction of the court over its person. Mills' Ann. Code, pp. 170–177, and cases cited; *De Votie v. McGerr*, 15 Colo. 467; *Prewitt v. Lambert*, 19 Colo. 7; 1 Ency. Pl. & Pr., 821, 836, 843.

3. It is also asserted that while the petitioner's claim grows out of the relation of the respondent as a receiver, the petition apparently proceeds against the company personally, and fails to show, either in the title of the pleading or in its statement, such representative capacity.

If such contention is true and such requirements are contemplated by our practice, the alleged defects cannot now be urged as ground for reversal. Advantage of what, at most, was but an irregularity, was not taken below, and we repeat here what was said as to the other questions already considered, it is too late to do so for the first time upon appeal.

In connection with this assignment it is proper to notice the further point made that inasmuch as the appellant was sought to be charged as a receiver, and it appearing from the face of the petition that no such relation existed, a recovery should not have been permitted. As to this we say the mere fact that the petitioner alleges that the order of the court permitting ores to be sold to the respondent, and its purchase thereof, and its holding of the proceeds subject to the order of the court, constituted it a receiver, is not controlling. If the Smelting Company, as a matter of fact, or as a matter of law, did not, under the various orders of the court, become a receiver, that, of itself, does not relieve it from liability with respect to the funds in its hands which belonged to the plaintiff in the case, if, in other respects, he states and proves a cause of action against it. The averment that respondent was a receiver is but a conclusion of law drawn by the pleader from the facts alleged.

We incline to the opinion that appellant was not technically a receiver, but, after its receipt and purchase of the ores under the order of the court and its voluntary retention of the proceeds subject to the court's order, a bailment arose, and the holder's relation with respect to this fund was no longer that of a mere purchaser, but rather that of a depositary or bailee without recompense, and the fund a deposit in the custody of an officer of the court. But whether the appellant was a receiver, or a trustee, or a depositary or bailee, without hire, or a mere holder, as an officer of the court, of funds over which the court had control, or whether the relation was one having no technical name, we think is quite immaterial. In either case a trust relation between the parties was created, and the holder may be charged with duties and liabilities concerning the deposit other than its return to the owner. This leads us directly to the determination of the duty and liability of such a holder to the owner with respect to the deposit, and this is the principal question in the case.

4. Briefly restating the agreed facts, it appears that under an order of the district court the appellant bought ores belonging to the appellee; that for several years it held, subject at any time to the court's orders, the moneys which were the equivalent in value of said ores; that these moneys it mingled with its own funds and used them indiscriminately in its own business of buying and smelting ores, which business yielded a profit of five per cent per annum on the capital employed, of which the funds in question were a part, and which were used by the Smelting Company in the same manner as it used its own capital and general funds, from whatever source acquired; that these moneys were not paid out by the company at the time of purchase solely because of the court's order directing that they be retained; that at all times the company had in its treasury more than the amount of the plaintiff's share in the proceeds of the ores, and was ready and prepared to pay on demand.

The appellant strenuously contends that its whole duty as

a holder of this money subject to the court's order was discharged when it paid the same into court on demand. On the other hand, the appellee claims the profits upon his money which it earned, and which were received by the appellant during the time the latter retained it.

The entire discussion by counsel concerning interest is irrelevant. Interest, as such, was not claimed, and, as such, was not awarded, but, as the agreed facts disclose, if the petitioner was entitled to the profits, the proper way to estimate the amount of his recovery was by computing interest at the agreed rate upon the amount of funds in the possession of the appellant.

That the appellant did not pay for the ores at the time of the purchase, or that it had in its general account, or in its treasury, sufficient to pay whenever demanded, or that it was prepared and ready to comply at any time with such demand, does not relieve it from liability. *Hummel v. Brown*, 24 Pa. 310.

It might have relieved itself from all liability for interest or profits by paying into court the money in its possession, and this, it appears, it might properly have done at any time of its own motion. *Lilley v. Mut. Ben. Life Ins. Co.*, 92 Mich. 153.

It has been held that a receiver is not chargeable with interest on balances in his hands merely because he mingled them with his own moneys, and from the combined fund drew for his individual use. *Radford v. Folsom*, 55 Iowa, 276.

So, also, it is said that where the transaction amounts to a simple deposit, the depositary is not liable for interest in the absence of a special agreement to that effect. *Boughton et al. v. Flint*, 74 N. Y. 476.

But a necessary inference from the language of the supreme court of Iowa, in the case *supra*, at page 285, is that where a receiver or other trustee is negligent in the discharge of his duties, or uses any part of the trust funds, or in any manner acquires profits therefrom, he must account for the same to the owner. This duty springs not from an express or implied

contract, but is an obligation that arises independently of any contract, and out of the trust relation. *Cruce v. Cruce*, 81 Mo. 676, 684; *Barney v. Saunders*, 16 How. (U. S.) 535, 543; *Cannon v. Apperson*, 14 Lea (Tenn.), 553, 582; *McKnight v. Walsh*, 23 N. J. Eq. 136, 146; 1 Perry on Trusts, secs. 454, 470, 471.

If the right to let or use money in the hands of a depositary follows from the bailment, it ceases to be a mere deposit, and becomes something else, and the rights and liabilities of the parties might be different. In the case at bar, the appellant, by the terms of the order or agreement of parties, did not have the right to let or use this fund. Neither was there any obligation resting upon it to invest the same to make a profit out of it, or to use it in its own business enterprises. Had it chosen to pay it over into court at once after the amount was ascertained, or had it retained the same in its possession and kept it separate and distinct from its own funds, or had not used it in the conduct of its own business and realized a profit therefrom, it would be unjust to charge it for a failure to do something which it was under no legal obligation to do ; but when it chose not only to retain possession of the money, but used it as a part of, and in the same way that it did, its own capital in carrying on its own business enterprises, and from the combined fund thus made up earned and received a profit, it is but in accordance with the plainest principles of fairness and justice that it should account to the owner of these funds for the profits earned by his part of the combined fund. Where a trustee holds money in trust, he must account for profits not only where it was his duty to make them, but also where, as a matter of fact, he has actually made profits.

No hardship results from this holding, for no loss has been sustained by the appellant. It merely gives up what has already been received by it as profits, not upon its own, but upon another's money.

So far as we have examined the authorities, they are all to this effect, and among many others that might be cited, we

refer to the following : 2 Kent's Com. (Holmes' 12th ed.), *567 ; Story on Bailments (8th ed.), sec. 99 ; Schouler's Bailments (2d ed.), secs. 52, 57 ; Redfield on Bailments, secs. 630, 634 ; Edwards on Bailments (3d ed.), secs. 52, 65 ; Notes to *Selleck v. French*, 1 Am. Lead. Cas. (Hare & Wallace's notes), 5th ed., 610, 632, 634, 637, 642, 643, and cases cited ; *Mattingly et al. v. Boyd*, 20 Howard (U. S.), 128 ; *Smith v. German Bank*, 60 Miss. 69 ; *Adams v. Cordis*, 8 Pick. 260 ; *Aldridge v. McClelland*, 36 N. J. Eq. 288 ; *Perkins v. Hollister*, 59 Vt. 348 ; *Hunsaker v. Sturgis*, 29 Cala. 142 ; *Gilson v. Martin*, 49 Vt. 474 ; 2 Am. & Eng. Ency. of Law, 56.

As throwing some light upon this case, see, also, *Wilson v. The People*, 19 Colo. 199 ; *Machette v. Wanless*, 2 Colo. 169 ; *Filmore et al. v. Reithman*, 6 Colo. 120.

See, also, 11 Central Law Journal, pp. 285, 306, 324, 342, where, though the subject specially treated is the question of interest, will be found a citation of cases which are more or less directly in point as to profits.

It follows that the judgment should be affirmed and it is so ordered.

*Affirmed.*