NATHAN L. MEANDS *vs.* CHARLES E. PARK,
and Logs and Claimants.

Franklin.    Opinion November 25, 1901.

*Logs. Lien. Laborer. Foreman. Scaler. R. S., c. 51, § 141; c. 91, § 38.*

The statute giving a lien to those who "labor" at cutting or hauling logs was obviously designed to afford protection to common laborers who gain their livelihood by manual toil, and who may be imperfectly qualified to protect themselves. The word "labor" was undoubtedly employed by the legislature in its limited and popular sense, to designate this class of workmen who labor with physical force in the service and under the direction of another for fixed wages; and such is the primary or specific lexical meaning uniformly assigned to the word "laborer."

Where the plaintiff "was foreman or superintendent of the entire logging operation, having charge of the men engaged in cutting and hauling the logs," but "performed no personal manual labor on the logs attached," *held;* that he did not "labor" in cutting or hauling the logs within the meaning of the statute.

Nor did he labor at cutting and hauling logs while acting as scaler. In 1876 the statute was amended by giving a lien to cooks, and in 1889 was again enlarged to include blacksmiths. It is for the legislature and not for the court to extend the lien to the scaler.

Agreed statement.    Plaintiff nonsuit.

Assumpsit to enforce a lien under R. S., c. 91, § 38, for plaintiff's services on certain logs that were attached on the writ. The case appears in the opinion.

*Forrest Goodwin,* for plaintiff.

The court can render judgment against the logs, this being a

proceeding in rem and no judgment in personam being claimed, without notice to the principal defendants or their appearance. R. S., c. 91, § 45; Freeman on Judgments, § 611; 2 Ency. of Plead. & Prac. p. 969; *Ward* v. *Boyce*, 152 New York, 191; *Plurede* v. *Levasseur*, 89 Maine, p. 172. Plaintiff was a laborer within the statute. *Plurede* v. *Levasseur*, supra; *Shaw* v. *Bradley*, 59 Mich. 199; *McCrillis* v. *Wilson*, 34 Maine, 286; *Kelley* v. *Kelley*, 77 Maine, 135; *Phillips* v. *Freyer*, 80 Mich. 254.

*E. Foster and O. H. Hersey ; F. W. Butler*, for claimants.

SITTING:    WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, JJ.

WHITEHOUSE, J.    This is an action of assumpsit brought by the plaintiff to enforce the statute lien on certain logs for personal labor, alleged to have been performed by him in cutting and hauling the logs attached. The case comes to this court on an agreed statement of facts, from which it appears "that no service was made on either defendant, either personally or by publication, other than the general notice given to log owners under the statute; that the plaintiff performed no personal manual labor on the logs attached, but was for three days of the time a scaler at $2.50 per day, and the balance of the time, to wit, 60 days, at $2.50 per day, was foreman or superintendent of the entire logging operation, having charge of the men engaged in cutting and hauling the logs from the stump to the landing."

It is provided by R. S., chap. 91, § 38, as amended by chap. 183 of the public laws of 1889, that: "Whoever labors at cutting, hauling, rafting or driving logs or lumber, or at cooking for persons engaged in such labor, or in shoeing horses or oxen, or repairing property while thus employed, has a lien on the logs or lumber for the amount due for his personal services" etc.

It is contended on behalf of the log owners, in the first place, that the action is not maintainable without service on the defendants, either actual or by publication; and secondly, that the plaintiff did not "labor" at cutting or hauling the logs in question with-

in the contemplation of this statute, and hence did not perform any "personal services" for which the statute gives him a lien.

It is unnecessary to consider whether or not the action would be maintainable without service on the defendants, for it is the opinion of the court that upon the agreed statement of facts in the case, the plaintiff did not "labor at cutting or hauling logs" within the meaning of this statute, and performed no service for which he was entitled to a lien on the logs attached. The language of the court in *Blanchard* v. *Portland and Rumford Falls Railway,* 87 Maine, 241, respecting the construction of the statute involved in that case is equally applicable to the statute now under consideration : "While it confers benefits, it also imposes burdens; while it gives protection to one of the parties, it compels the other party to pay a debt which he had no voice in contracting. The correct rule for the interpretation of such a statute is to neither extend nor restrict its operation beyond the fair meaning of the words used."

The statute giving a lien to those who "labor" at cutting or hauling logs was obviously designed to afford protection to common laborers who gain their livelihood by manual toil, and who may be imperfectly qualified to protect themselves. The word "labor" was undoubtedly employed by the legislature in its limited and popular sense, to designate this class of workmen who labor "with physical force in the service and under the direction of another for fixed wages." *Rogers* v. *Dexter and Piscat. R. R. Co.,* 85 Maine, 374. And such is the primary or specific lexical meaning uniformly assigned to the word "laborer." Says Webster: "One who labors in a toilsome occupation ; a person that does work that requires strength rather than skill, as distinguished from that of an artisan." The Standard Dict: "One who performs physical or manual labor, especially one who for hire performs any physical labor requiring little skill or accuracy." The Century Dict: "Specifically, one who is engaged in some toilsome physical occupation ; in a more restricted sense, one who performs work which requires little skill or special training, as distinguished from a skilled workman." See Am. and Eng. Enc. of Law, Vol. 12, p. 532, and Vol. 23, p. 872.

In accordance with this interpretation, it was held by this court in *Rogers* v. *Dexter and Piscat. R. R. Co.*, supra, that one who contracts to do a certain amount of grubbing for a railroad at a fixed price per yard, was not a "laborer" within the meaning of R. S., chap. 51, § 141, which imposes upon railroads the liability to pay the wages of laborers employed by contractors, although in that case the sub-contractor was engaged with his men a portion of the time in performing physical labor. So in *Blanchard* v. *Portland & Rumford Falls Ry.*, supra, it was held that one who superintends the building of bridges at an agreed compensation per day, keeps an account of the men's time, and makes out their pay-rolls, is not a "laborer" within the meaning of that statute.

In the construction of similar statutes in other jurisdictions, it has also been held that the word "laborer" does not include a superintendent or bookkeeper. *Wakefield* v. *Fargo*, 90 N. Y. 213. Nor a civil engineer, *Penn. & Del. Railroad Co.* v. *Leuffer*, 84 Penn. St. 168, (24 Am. Rep. 189.) Nor an assistant engineer, *Brockway* v. *Innes*, 39 Mich. 47, (33 Am. Rep. 348). Nor a farm overseer whose sole duty was to supervise those who labored under his authority. *Whitaker* v. *Smith*, 81 N. C. 340, (31 Am. Rep. 503).

In the case at bar it has been seen that the plaintiff for sixty days "was foreman or superintendent of the entire logging operation, having charge of the men engaged in cutting and hauling the logs," but "performed no personal manual labor on the logs attached." Under these circumstances, it is clear that he did not "labor" in cutting or hauling the logs within the meaning of the statute.

Nor did he labor at cutting or hauling logs while acting as scaler. In 1876 the statute was amended by giving a lien to the cook, and in 1889 was again enlarged to include the blacksmith. It is for the legislature and not for the court to extend the lien to the scaler.

According to the stipulation of the parties the entry must therefore be,

*Plaintiff nonsuit.*