Submitted on briefs October 10, reversed and remanded November 28, 1922.

## SPRATT *v.* BROWN–PETZEL LUMBER CO. ET AL.

(210 Pac. 700.)

Logs and Logging—Contractor for Logging Company cannot Continue Work and Recover Contract Price After Order to Stop.

1. Where, in violation of its executory contract, a logging company directs its contractor to discontinue driving logs, the contractor may recover damages, but cannot continue work and recover contract price, and this without reference to cause of his discharge.

Logs and Logging—Statutory Logging Lien Covers Contractor's Indebtedness for Labor.

2. Under Section 10236 et seq., Or. L., a logging company's contractor, until notified by the company to discontinue work, has authority to incur indebtedness for labor, which, if not paid, subjects the company's logs to the lien provided in the act, but the company may revoke this authority and avoid liens for further services merely by notifying the contractor to discontinue work and informing the employees of contractor's notification, though it thereby breaches its contract with the contractor.

Logs and Logging — Logging Lien Unenforceable Where Lumping Lienable Items With Those Nonlienable.

3. A logging lien, asserted by contractor's employees under Section 10236 et seq., Or. L., showing on its face a lumping of lienable items, inseparable, without extrinsic proof from nonlienable items incurred subsequent to notice by the logging company to discontinue work, is unenforceable.

From Marion: GEORGE G. BINGHAM, Judge.

In Banc.

REVERSED AND REMANDED.

---

3. For what labor or service logger's lien may be claimed, see note in **Ann. Cas.** 1916C, 198.

For appellant there was a brief over the names of *Messrs. Smith & Shields, Mr. Virgin H. Massey* and *Mr. Lyle V. McCroskey.*

For respondent there was a brief over the names of *Mr. V. A. Goode* and *Mr. W. C. Winslow.*

RAND, J.—Plaintiff seeks to foreclose three liens upon logs belonging to defendant, Brown-Petzel Lumber Company. Plaintiff and his assignors, J. W. Krise and R. E. Goodell, performed labor upon the logs at the instance of the defendants, L. J. Breard and A. M. Krise. This labor was performed in connection with the making of a drive of the logs in the Santiam River.

The Brown-Petzel Lumber Company operates a sawmill on the Santiam River at Stayton, Oregon. On June 4, 1920, it entered into a written contract with said defendants, L. J. Breard and A. M. Krise, wherein it was understood and agreed that Breard and Krise should drive the logs and deliver them to the defendant company at its mill pond, for which the defendant company agreed to pay $3 per thousand feet board measurement. There was no stipulation as to the time in which the work should be completed, but it was understood between the parties that the logs were to be delivered in time for the operation of the mill the following winter. At the time the contract was entered into there was not sufficient water in the river to make the drive. Later in the month of June the water rose, and Breard and Krise commenced work in performance of the contract and continued work for a period of a week or ten days, when the water in the river again became too low, which compelled them to discontinue the work. They

105 Or.—43

made no actual delivery of any of the logs. Early in September the water again rose, at which time the defendant company notified Breard and Krise that the company itself would take charge of the drive, and at that time gave them explicit directions to discontinue all work under the contract and not to do anything further in connection with the logs.

After receiving this notice, and notwithstanding the explicit directions of the defendant company, Breard and Krise employed the plaintiff as a foreman to take charge of the drive and employed others, including J. W. Krise, one of plaintiff's assignors. They commenced work on September 10th, and remained at work until September 13th, when the defendant company, through its manager, notified the plaintiff and his assignor, J. W. Krise, as well as the other employees then at work, that the defendant company had taken over the work from Breard and Krise and would not be responsible nor pay for any work done by them thereafter. Shortly after receiving said notice, all of the employees of Breard and Krise, except plaintiff and his assignor, J. W. Krise, ceased work and were paid by the defendant company.

The plaintiff testified that before commencing work he had been informed that the defendant company had forbidden Breard and Krise to do anything further under the contract. He also testified that before commencing work he tried to obtain a contract to drive said logs in behalf of himself and the defendant Krise, but was unable to obtain such contract. Goodell, plaintiff's other assignor, did not commence work until September 17th, but he testified that before commencing work he had been informed that the work had been taken away from Breard and Krise.

According to the time-book, plaintiff's "Exhibit 1," kept by the defendant Krise, plaintiff commenced work on September 10th and ceased work on October 8th. He claims a lien for twenty-four and one-half days' work at $15 per day. J. W. Krise, one of said assignors, worked on September 10th and 11th, then ceased working until September 20th, after which he worked until October 8, 1920. He claimed a lien for twelve and one-half days' work at $8 per day. Goodell, the other assignor of plaintiff, commenced work on September 17th and ceased work on October 8th and claimed a lien for seventeen and one-half days' work at $8 per day.

1. Whether, in forbidding Breard and Krise to do any further work under the contract, the defendant company breached its contract, is not a question that can be determined in this suit. If the defendant company did breach its contract, Breard and Krise, by an action at law, can recover the damages resulting from such breach. The question we are now called upon to decide is this: Can the plaintiff enforce, as against the defendant company's logs, a lien for the labor of himself and his assignors under employment of Breard and Krise after the defendant company had expressly directed Breard and Krise to discontinue work under the contract and had given notice thereof to plaintiff and to each of his assignors? The determination of this question does not depend in any way upon whether the defendant company was acting within its legal rights in ordering Breard and Krise to discontinue work under the contract. The contract at the time was executory on both sides, and it was within the power of the defendant company to forbid further performance of the contract by Breard and Krise. After the defendant company directed Breard and Krise to dis-

continue all work under the contract Breard and
Krise could recover the damages sustained by an
action at law, if such action upon the part of the
company was in violation of the contract, but they
could not continue the work under the contract and
recover the contract price for such work.

In *Herring-Marvin Co.* v. *Smith,* 43 Or. 315 (72
Pac. 704), this court, speaking through Mr. Justice
EAKIN, said:

"Where a contract is executory, a party has the
power, if he choose, to interdict performance by an
explicit direction to that effect, and in such case he
subjects himself to an action sounding in damages
for a breach of the contract, and none will lie on
the contract itself as for sale and delivery: 2 Mechem,
Sales, §§ 1091, 1092; *Unexcelled Fire-Work Co.* v.
*Polites,* 130 Pa. 536 (18 Atl. 1058, 17 Am. St. Rep.
788); *Collins* v. *Delaporte,* 115 Mass. 159; *Butler* v.
*Butler,* 77 N. Y. 472 (33 Am. Rep. 648); *Moline Scale
Co.* v. *Beed,* 52 Iowa, 307 (3 N. W. 96, 35 Am. Rep.
272); *Danforth* v. *Walker,* 37 Vt. 239, 40 Vt. 257;
*Clark* v. *Marsiglia,* 1 Denio (N. Y.), 317 (43 Am. Dec.
670); *Gibbons* v. *Bente,* 51 Minn. 499 (53 N. W. 756,
22 L. R. A. 80)."

Again, in *Dougan Co.* v. *Klamath County,* 99 Or.
436, 460 (193 Pac. 645), this court, speaking through
Mr. Justice JOHNS, said:

"The vital question in this case is, whether, after
the receipt of such notice, Dougan could go on and
complete the contract, and then recover the full
amount of his claim against the county. *Clark* v.
*Marsiglia,* 1 Denio (N. Y.), page 317 (43 Am. Dec.
670), lays down the rule: 'The measure of damages
against a party who has employed another to do
certain mechanical work at a price agreed upon, and
who has countermanded his directions and forbidden
the further execution of the work, after it had been
commenced, is not the whole amount agreed to be
paid, but a just recompense for such injury as the

party employed has sustained on account of the breach of the agreement. The party so employed has no right to proceed with the work after such countermand.' This is the leading case on that question, and the legal principles are followed and sustained in Cyc., Vol. 9, page 638; R. C. L., Vol. 6, page 1031; and C. J., Vol. 13, page 655, with numerous authorities cited."

"Notice to a contractor not to proceed with the erection of houses under the contract will preclude recovery of a payment for work performed subsequent to the notice. *Heaver* v. *Lanahan* (Md.)," note, 16 L. R. A. 656.

"In all such cases the just claims of the party employed are satisfied when he is fully recompensed for his part performance and indemnified for his loss in respect to the part left unexecuted; and to persist in accumulating a larger demand is not consistent with good faith toward the employer." *Clark* v. *Marsiglia, supra.*

"While a contract is executory, a party has the power to stop performance on the other side by an explicit direction to that effect by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that hour or stage in the execution of the contract. The party thus forbidden cannot afterwards go on, and thereby increase the damages, and then recover such damages of the other party." *Danforth* v. *Walker,* 37 Vt. 244.

In the footnote, 6 L. R. A. (N. S.) 53, the authors say:

"Nor has an employee any right, where an employer countermands an order for work to be done before the work is finished, obstinately to persist in the work against the employer's wish, and then recover the compensation originally agreed upon. *Clark* v. *Marsiglia,* 1 Denio (N. Y.), 317 (43 Am. Dec. 670); *Stephens* v. *Howe,* 2 Jones & S. (N. Y.) 133; *Champion* v. *Hartshorne,* 9 Conn. 564; *Derby* v. *Johnson,* 21 Vt. 21. And this is so without reference to

the cause of the discharge. His remedy is his right to enforce payment of damages. *Champion* v. *Hartshorne, supra.* The employer has the right to stop the work if he chooses to take upon himself all the consequences of his breach of the contract. *Derby* v. *Johnson, supra.*"

"While a contract is executory a party has the power to stop performance on the other side by an explicit direction to that effect, subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that stage in the execution of the contract. The party thus forbidden cannot afterward go on, and thereby increase the damages, and then recover such damages from the other party. * * Hence, when one has agreed to erect a building for two persons who have bound themselves jointly to pay a certain sum for the work, but, before entering upon the performance of the work, is notified by one of those persons that he will not carry out his part of the contract, the allowable and only proper course is to treat the contract as broken by both the joint contractors and sue for damages." 6 R. C. L. 1029.

"But after notice of such repudiation the other party cannot go on and complete an executory contract and then sue for the full contract price or for any increased damages caused by his continuing to perform. This principle has been applied in a number of cases to contracts of employment, the rule being that an employer may order the discontinuance of work which he has contracted with or employed another to perform, subject to proper compensation in damages to the employee; and that the latter cannot then go on with the work and recover the contract price." 13 C. J. 655, § 731.

Under these authorities, it is obvious that neither Breard nor Krise could recover from the defendant company for work done or services performed after they were notified to discontinue work under the contract. The same rule applies to their employees as to the work done by them subsequent to the time

when notified that the defendant company had given explicit directions that the work should be discontinued by Breard and Krise.

2. Under Sections 10236, Or. L., et seq., the work or labor for which a logger's lien can be claimed must be done at the instance of the owner of the logs or his agent. Until notified by the defendant company to discontinue work, Breard and Krise were clothed with authority to contract for such labor as might be necessary to carry out their contract. This authority was not that of an ordinary agent having power to bind the defendant company individually, but it authorized them to incur indebtedness for labor, which, if not paid, would subject the defendant company's logs to a statutory lien. This authority, like that of an ordinary agent, could be terminated by a revocation on the part of the principal, even though such revocation was in violation of the contract, and although because of such revocation the principal may be liable for damages. To terminate such authority all that it was necessary for the defendant company to do was to notify Breard and Krise to proceed no further under the contract and to free itself from the imposition of liens upon its property for labor performed by third parties at the instance of Breard and Krise subsequent to such revocation, all that the defendant company was required to do was to give notice to such third parties that the authority of Breard and Krise under the contract had been revoked. That this authority was revoked and that notice thereof was given is admitted by the testimony of all of the parties to this suit. Hence, it follows that the labor performed by plaintiff and his assignors upon the logs at the instance of Breard and Krise subsequent to such revocation was not performed at the instance of the owner or of his agent,

and therefore, the liens claimed therefor cannot be maintained.

3. The plaintiff and his assignors are not entitled to a lien for the labor performed by them subsequent to September 13th, the day on which they received said notice. They have included in their claims of lien a charge for labor performed subsequent to said date. Each of the liens on its face contains a lumping charge for lienable and nonlienable items, and it is impossible to segregate one from the other without the aid of extrinsic proof. The liens are therefore unenforceable.

For the reasons above stated, the decree appealed from will be reversed and the cause will be remanded with directions to dismiss the complaint, and it is so ordered.

REVERSED AND REMANDED WITH DIRECTIONS.