Argued October 16, affirmed October 30, 1952

# KIDDER *v.* NEKOMA LUMBER CO. ET AL.

249 P. 2d 754

*Herbert W. Lombard,* of Cottage Grove, argued the cause for appellant. With him on the briefs was John H. Horn, of Eugene.

*Richard Bryson,* of Eugene, argued the cause for respondents. On the brief were Bryson, Riddlesbarger & Bryson.

Before BRAND, Chief Justice, and ROSSMAN, LUSK, LATOURETTE, WARNER and TOOZE, Justices.

WARNER, J.

This is a suit to foreclose a logger's lien. The plaintiff-appellant rendered services in two capacities, first, in scaling while in the pond the logs hereinafter referred to and, second, in acting as a watchman to look after and care for the logs so scaled and while they were still in the same pond. To insure payment for this labor, plaintiff filed what is commonly known as a logger's lien.

The defendant Hansen Pacific Lumber Corp. had, in the first instance, obtained and secured the logs and thereafter delivered them afloat to the pond of the defendant Nekoma Lumber Co. The notice of lien, which is appended as an exhibit to plaintiff's complaint, names both of said defendants as the reputed owners of said logs but states that the plaintiff's employment was contracted by Nekoma Lumber Co.

Subsequent to the filing of the lien, the defendant Hansen Pacific Lumber Corp. secured the release of the logs by filing a bond under the provisions of § 67-1310, OCLA. On this bond the defendant United Pacific Insurance Company is surety. Shortly after filing his lien, plaintiff commenced a suit to foreclose. Hansen Pacific Lumber Corp. and the insurance company joined in a demurrer to plaintiff's complaint on the ground that it did not state facts sufficient to constitute a cause of suit against them. Although duly served, the defendant Nekoma Lumber Co. did not appear. The demurrer of the other defenedants was sustained; and upon plaintiff's failure to plead further, his

complaint was dismissed as to them. From this decree, plaintiff appeals.

Section 67-1301, OCLA, under which the lien was filed, provides:

"Every person performing labor upon or who shall assist in obtaining or securing sawlogs, spars, piles, cordwood, or other timbers, has a lien upon the same for the work or labor done upon or in obtaining or securing the same, whether such work or labor was done at the instance of the owner of the same or his agent. The cook in a logging, or other camp, and any and all others who may assist in or about a logging, or other camp maintained for obtaining or securing sawlogs, spars, piles, cordwood, or other timber, shall be regarded as a person who assists in obtaining or securing the sawlogs, spars, piles, cordwood, or other timber herein mentioned."

One of the defendants' reasons for assailing the complaint is predicated upon the proposition that the notice of lien contains lienable and non-lienable items not segregated. The portion of the notice of lien so challenged reads as follows:

"* * * That the name of the owners, or reputed owners is Nekoma Lumber Co. and Hansen Pacific Lumber Corp., that Hal Hildebrant and Kenneth Gray of Nekoma Lumber Co., employed said A. E. Kidder to perform such labor and render such assistance upon the following terms and conditions: to scale said logs as same delivered to pond, to care for logs in pond and to watch said pond and to keep said logs in safe condition, and to watch same. at the wage of $2.00 per hour 48 hours per week. and that said work was done for the benefit of all defendants. that said contract has been faithfully performed and fully complied with on the part of said A. E. Kidder who performed labor upon and assisted in cutting and getting out said logs for the

period of 148 days; that such labor and assistance were so performed and rendered upon said property between the 21st day of June 1950, and the 15th day of November 1950; and the rendition of said services was closed on the 15th day of November 1950, and thirty days have not elapsed since that time; that the amount of claimant's demand for said services is 770½ hrs at $2.00 per hour or the sum of $1541.00 and 71 hrs at $3.00 per hour overtime or the sum of [$]213.00 or a total sum of $1754.00 that no part thereof has been paid, except $815.00 [sic] in various payments and there is now due and remaining unpaid thereon, after deducting all just credits and offsets the sum of $1139.00 in which amount he claims a lien upon said property.''

■ The decisive question in this matter is whether or not plaintiff's services as a scaler fall within the purview of § 67-1301, OCLA. If the answer is in the negative, then it follows that the lien must fail, for if we assume that plaintiff's services as a watchman are protected by that section or by § 67-1302, OCLA, then it is obvious from the face of the lien that there has been a commingling of lienable and nonlienable items impossible of segregation and, therefore, fatal to the validity of the claimed lien. *Phillips v. Graves,* 139 Or 336, 349, 9 P2d 490, 83 ALR 1; *McKinley et al. v. Tice et al.,* 129 Or 190, 196, 276 P 1110; *Spratt v. Brown-Petzel Lumber Co.,* 105 Or 672, 680, 210 P 700.

■ At the very threshold of our inquiry we are confronted with a determination of what is the proper rule of construction to apply when ascertaining what persons or classes of persons are beneficiaries under a statutory lien of this kind. Plaintiff urges that a liberal construction is in order. Defendants, to the contrary, argue for a strict construction. The answer must be resolved in favor of a strict construction when seeking to discover, as here, who can enjoy the status of lienor.

*Phillips v. Graves,* supra, at 347; *McKinley et al. v. Tice et al.,* supra, at 193. However, when it is found that a given claimant is entitled to invoke the beneficent provisions of a given lien law, then the statute is thereafter liberally construed in favor of such claimant. *McKinley et al. v. Tice et al.,* supra, at 194.

Our most recent statement on this point will be found in *Timber Structures v. C. W. S. G. Wks.,* 191 Or 231, 246, 229 P2d 623, where we said:

> "* * * a claimant to such a lien must in the first instance bring himself clearly within the terms of the statute. The statute is strictly construed as to persons entitled to its benefits and as to the procedure necessary to perfect the lien; but when the claimant's right has been clearly established, the law will be liberally interpreted toward accomplishing the purposes of its enactment * * *."

In *Pilz v. Killingsworth et al.* (1891) 20 Or 432, 26 P 305, this court had occasion to construe § 3676, Hill's Code (now § 67-108, OCLA) giving a lien for work done and for materials furnished for improving a city or adjoining street. Mr. Justice ROBERT BEAN there said at 435:

> "* * * The object and purpose of the act is to protect those persons who, by their labor, skill, or material, have contributed to the enhancement in value of the owner's property, and this object should be kept in view in interpreting the language used * * *."

■ We think the words of Mr. JUSTICE BEAN are applicable here. It is equally apparent to us that the object and purpose of the logger's lien act was to protect those persons who labor in and around logging camps in what are commonly known as logging operations and who, by their labor and skill in some manner connected with and incidental to the conversion of

timber into logs, contribute to the enhanced value of the logs produced from the timber and, as we shall hereafter demonstrate, timber which is within the area of such an operation.

Assuming for the moment that plaintiff's labor and services were rendered within the bounds of a logging camp, we move to consider whether or not a scaler is entitled to invoke the benefits of § 67-1301, OCLA.

■ The right to a laborer's lien is statutory and, in the absence of a specific law, such a right would not exist; one claiming the benefit of a lien statute must bring himself clearly within its terms. *Boise-Payette L. Co. v. Dominican Sisters,* 102 Or 314, 319, 202 P 554, and cases there cited: *First Nat. Bank of Union v. Wegener,* 94 Or 318, 342, 181 P 990, 186 P 41.

A scaler has been defined as "An expert person employed to determine the number of board feet and the per cent of unsound timber." 54 CJS, Logs and Logging, 677, § 1(i). Also see *Connecticut Valley Lumber Co. v. Stone,* 212 F 713, 715; *State ex rel. Hospes v. Lumberman's Board of Exchange,* 33 Minn 471, 23 NW 838.

Common knowledge, as well as the foregoing definition, teaches that scaling does not comprehend assistance "in obtaining or securing sawlogs". *Puget Sound Log Scaling & G. Bureau v. Danaher L. Co.,* 121 Wash 309, 209 P 530, 531. Therefore, if plaintiff is entitled to a lien for his work as a scaler, it must be clear that scaling is equivalent to "performing labor upon * * * sawlogs", in the sense employed by the statute, thereby enjoying the same protective status which the statute accords to those laborers familiar to an ordinary logging operation engaged in felling, bucking, swamping, yarding, etc. *Peterson v. State Ind. Acc. Comm.,* 140 Or 326, 328, 12 P2d 564.

There is a paucity of precedent for our guidance. We have been cited to only three cases involving the precise question presented here. Plaintiff relies upon *Kline v. Comstock*, 67 Wis 473, 30 NW 920; and the defendants rest heavily upon *Puget Sound Log Scaling & G. Bureau v. Danaher L. Co.*, supra, with some reliance upon *Meands v. Park*, 95 Me 527, 50 A 706.

■ Section 67-1301, OCLA, was taken from the Washington logger's lien statute and in 1891 was embodied into our law with few modifications and changes. *North Pacific Lumber Co. v. Lang*, 28 Or 246, 256, 42 P 799, 52 Am St Rep 780. From this it follows that the interpretations given to the logger's lien statute by the Supreme Court of that state are necessarily examined with respect and its conclusions given great weight.

In *Puget Sound Log Scaling & G. Bureau v. Danaher L. Co.*, supra, the Washington court held that the provision for loggers' liens did not embrace the services of a scaler, saying:

"* * * It is plain that a scaler is not one who assists in obtaining or securing sawlogs, as they were already obtained and secured and in the boom when the scaling and grading took place. The question, then, narrows to whether a scaler is included within the meaning of 'every person performing labor upon.' The purpose of the scaling was not to change the character of the logs in any particular; they are in exactly the same state after being scaled as before * * *."

*Kline v. Comstock*, supra, and *Meands v. Park*, supra, were considered by the court in the Puget Sound case and disposed of as follows:

"* * * The case of Kline v. Comstock, 67 Wis. 473, 30 N. W. 920, cited by the respondent, is not controlling, because in that case it was conceded

that the plaintiff had a lien for the amount of his services as a scaler. The case of Meands v. Park, 95 Me. 527, 50 Atl. 706, cited by the appellant, is not in point, because the statute of the state of Maine then being construed was not so closely similar to the statute of this state as to make the holding in that case an authority upon the question here presented.''                                    .

We concur in the foregoing analysis of the Wisconsin and Maine holdings.

■ The logs scaled by plaintiff in the instant matter, in the words of the Washington decision, "are in exactly the same state after being scaled as before", which is tantamount to saying that their value had not been enhanced by the services of the scaler. *Pilz v. Killingsworth et al.,* supra, 20 Or 432. Scaling logs, inventorying merchandise, and surveying or appraising properties have several attributes in common. Upon conclusion of the services rendered in such activities, the property inspected continues in the same form that it was in prior thereto and the same value that existed prior to making the scale, inventory, survey or appraisement. Moreover, services of this character are ordinarily made for the information of the owner to determine the nature and value of his assets or to place the owner or a prospective buyer in a sounder position when negotiating a purchase or a sale; but a buyer is not bound by a seller's scale nor 'a seller by a buyer's scale, unless they voluntarily agree to accept the scale record of the other.

To hold that every person performing labor upon logs includes the services of one scaling them would extend the statute beyond the meaning of the words used and, as we believe, beyond the legislative intent and would result in bringing under the protecting um-

brella of the logger's lien law a class of persons which the legislature did not intend should enjoy its beneficent coverage.

There is yet another and equally cogent reason for denying plaintiff the benefit of a logger's lien.

■ The title, necessarily being a part of a legislative act, can be resorted to as a valuable aid in construing it and determining the legislative intent. *Eugene School Dist. No. 4 v. Fisk,* 159 Or 245, 257, 79 P2d 262; *Turnidge v. Thompson,* 89 Or 637, 651, 175 P 281.

Section 67-1301, OCLA, was originally the act found in Oregon Laws 1891, p. 117. The first sentence thereof, in which we are particularly interested, has remained unchanged during the half century intervening since its enactment, except for the inclusion of the word "cordwood" by ch. 17, Oregon Laws, 1915.

■ The title to the act of 1891 reads: "[An Act] To Protect Laborers in Timber and Logging Camps * * *." It carries the connotation that the "camp" is the situs or area of a logging operation within which the labor for which a lien is claimed must originate or accrue. A "logging operation", as the words are employed by us, ordinarily means "the business of felling trees of merchantable size for lumber, cutting them into logs and transporting the logs to sawmills or market." *Pierson v. General Plywood Corporation,* 76 Ga App 853, 47 SE2d 605, 607. Also see *Peterson v. State Ind. Acc. Comm.,* supra, 140 Or 326; *Hogan v. T. J. Moss Tie Co.,* 210 La 362, 27 So2d 131; *Karger v. Wangerin,* 230 Minn 110, 40 NW2d 846, 851; 25 Words & Phrases, perm ed, 587.

■ Plaintiff's complaint and notice of lien plainly reveal that his work as a scaler and as a watchman was rendered in or about a mill pond of the Nekoma Lumber

Co. where the logs were stored and which is somewhat distant from the area in which they were cut and felled. From the complaint we learn that the defendant Hansen Pacific Lumber Corp. secured the sawlogs and thereafter delivered them to the mill pond of the defendant Nekoma Lumber Co. This pond was clearly not a part of the logging camp from whence the logs came. It was at the Nekoma pond where plaintiff's services were rendered in behalf of the latter company. Plaintiff's labor not having been performed, in whole or in part, within the area of the camp or logging operation where the logs were obtained, he cannot claim a lien under the provisions of § 67-1301, OCLA.

The decree will be affirmed.

BRAND, C. J., specially concurring.

I concur in the result, predicating my conclusion solely upon the second ground set forth in the opinion of the court.