LAWRENCE E. A. SANDS AND HENRIETTA SANDS, PART-
NERS, DOING BUSINESS UNDER THE FIRM NAME AND STYLE OF
LARRY SANDS LUMBER COMPANY, PLAINTIFFS AND
APPELLANTS, *v.* SUPERIOR BUILDINGS COMPANY, A
MONTANA CORPORATION, DEFENDANT AND RESPONDENT.

No. 10170.
Submitted October 31, 1960. Decided December 28, 1960.
Rehearing Denied January 24, 1961.
358 P.2d 445.

2

Ralph J. Anderson and Stanley P. Sorenson, Helena, Murphy, Robinson & Keller, Kalispell, for appellants. Ralph J. Anderson argued orally.

Smith, Boone & Rimel, Russell E. Smith, Missoula, Rognlien & Hash, D. Gordon Rognlien, Kalispell, for respondent. Russell E. Smith and D. Gordon Rognlien, argued orally.

MR. JUSTICE ANGSTMAN delivered the Opinion of the Court.

This action resulted in a verdict and judgment in favor of defendant. It was based on a prior judgment in the same court.

The facts out of which the controversy arose are these: On August 7, 1952, plaintiffs, as partners, engaged in logging operations entered into an agreement with the United States Department of Agriculture Forest Service whereby plaintiff agreed to purchase and remove 5,900,000 board feet of lumber in a designated area in Flathead County; plaintiffs on December 31, 1953, assigned their rights under the agreement to defendant in trust as security for moneys advanced by de-

fendant to plaintiffs. This assignment was agreed and consented to in writing by the Forest Service. Under that agreement defendant was to pay plaintiffs $19 per M log scale for the cutting, hauling and delivery of the logs. The trust agreement also contained this provision:

"The party of the first part [defendant here] also specifically reserves unto itself the right to have any other logger go on said property as described in said timber sales agreement and to log the same, together with the parties of the second part, only in the event that the logging operations of the parties of the second part are unsatisfactory to the party of the first part."

That a controversy arose between plaintiffs and defendant as to the meaning and effect of the trust agreement and an action was brought by plaintiffs against defendant to determine the controversy. That action resulted in a judgment wherein it was determined that the assignment of December 31, 1953, shall be of no force and effect upon "the payment by the plaintiffs to the defendant, within fifteen (15) days from August 21, 1956, of the sum of $7,235.81, and upon such payment being made the defendant shall have no right, title or interest in and to such Timber Sale Agreement No. Alfs-17206 [being the contract dated August 7, 1952]."

The judgment also contained this clause:

"It Is Further Ordered that in the event plaintiffs fail to make such payment within such 15 day period, then defendant shall have the right to log pursuant to said Timber Sale Agreement No. Alfs-17206 by virtue of such Assignment in Trust, Third Party Agreement and Application for Recognition and Approval, until it has received from such operations a net profit in such sum of $7,235.81, after which said Assignment in Trust, Agreement and Application for Recognition and Approval shall be of no force and effect, and thereby defendant shall have no further interest in said Timber Sale Agreement No. Alfs-17206."

Plaintiffs failed to pay the $7,235.81 within the 15 day period as provided in the judgment. Plaintiffs did no further logging after the entry of the judgment.

Defendant between May 26, 1958, and November 30, 1958, removed a total of 2,671,210 board feet of timber from the lands involved.

Plaintiffs brought this action and took the position that defendant had received a profit by converting the logs into lumber and lumber products in its own mill and then selling the lumber and lumber products, and it is this profit that plaintiffs sought to recover. Allegations with respect to these profits were stricken from the complaint.

An amended complaint was filed which set forth in more detail the facts relative to the profits from the manufacture of the logs into timber and timber products and these allegations were again stricken on motion of defendant, and the case was tried on defendant's theory that plaintiffs could not recover profits from the milling operations. The plaintiffs elected to stand on the complaint as it remained after the above-mentioned allegations were stricken. Trial before a jury resulted in a verdict and judgment for defendant. Plaintiffs have appealed from the judgment entered on the verdict.

The only question presented by the appeal is whether the court erred in sustaining the motion to strike. This in turn depends upon the meaning of the judgment on which the action is based. The ruling of the trial judge, that profits from the milling operations, that is, profits derived from the sawing of the logs into lumber and lumber products was not profits from logging operations, was correct.

"* * * as ordinarily defined, logging consists of felling trees, cutting them into logs, and transporting them to mill or market." Middlebusher v. State Ind. Acc. Comm., 147 Or. 459, 34 P.2d 325, 327. To the same effect are Peterson v. State Ind. Acc. Comm., 140 Or. 326, 12 P.2d 564; Kid-

der v. Nekoma Lumber Co., 196 Or. 409, 249 P.2d 754, and Karger v. Wangerin, 230 Minn. 110, 40 N.W.2d 846.

Plaintiffs, in reliance upon the case of Boston & C. Smelting Co. v. Reed, 23 Colo. 523, 48 P. 515, contend that a trust arose because they contend that at all times they were the owners of the logs and that when defendant converted them to its own use plaintiffs were entitled to whatever profits were derived. We do not so view the rights and obligations of the parties. Their rights came from the judgment. Under the judgment "defendant shall have a right to log * * * until it has received from such operations a net profit in such sum of $7,235.81." Obviously then defendant had some right in the logs until the debt owing to it from plaintiffs was retired. Such were not the facts in the Reed case. The court in this case gave plaintiffs' offered instructions to the effect that if the value of the logs exceeded the logging expense by more than $7,235.81 then plaintiffs were entitled to recover, whereas, if the value of the logs did not exceed the cost of defendant's operation plus $7,235.81 then their verdict must be for defendant.

Since the jury found for defendant we must conclude that the value of the logs did not exceed the cost of defendant's operation in cutting and hauling the logs to its mill and hence, we need not determine what the consequences would have been, had the value exceeded the cost of operations plus $7,235.81. Such excess may have been subject to a trust, but as above noted, that is not the case before us. The court properly sustained the motion to strike.

The judgment is affirmed.

MR. CHIEF JUSTICE HARRISON, and MR. JUSTICES ADAIR and CASTLES concur.

MR. JUSTICE BOTTOMLY not participating.