The Delaware Marine Supply Manufacturing Company, a corporation of the State of Delaware, defendant below, plaintiff in error, *vs.* Philadelphia Lamp Manufacturing Company, a corporation of the State of Delaware, plaintiff below, defendant in error.

1. Contracts—Manufacture of Goods—Rescission—Damages.

The seller in an executory contract for the manufacture and delivery of goods, injured by the buyer's rescission, cannot recover additional damages by ignoring such rescission and proceeding with the manufacture and delivery.

2. Contracts—Manufacture of Goods—Rescission—Performance.

An executory contract for defendant's manufacture and delivery of goods was terminated upon its rescission by plaintiff, except for the purpose of defendant's recovery of damages, if any, from the breach; and defendant could not perform under the terms of the rescinded contract, nor did he have such right under a provision that, on the plaintiff's failure to carry out its contract to take over and pay for the goods manufactured, the defendant might sell such goods for the plaintiff's account.

3. Replevin—Action—Damages for Rescission of Contract.

The question of damages for a breach of contract cannot be determined in an action of replevin.

4. Bailment—Rescission of Contract—Right of Possession.

Where an executory contract, under which defendant was to manufacture and deliver goods to plaintiff, and under which the plaintiff was to deliver to defendant all necessary tools, was terminated by plaintiff's rescission of the contract, the defendant's right of possession of the tools was also terminated, and plaintiff was entitled to replevin to recover possession of the tools.

(*June* 15, 1915.)

Curtis, Chancellor, Pennewill, C. J., and Rice, J., sitting.

*Charles F. Curley* for plaintiff in error.

*Charles B. Evans* for defendant in error.

Supreme Court, June Term, 1915.

Error (No. 2, January Term, 1915) to Superior Court, New Castle County. Case below, No. 29, September Term, 1911.

Replevin by the Philadelphia Lamp Manufacturing Company against the Delaware Marine Supply Manufacturing Company. From a judgment of the Superior Court (*ante* 81, 90 *Atl.* 595) for plaintiff, defendant brings error. Affirmed.

The facts and contentions appear in the report of the case below, and in the opinion here.

RICE, J., delivering the opinion of the court:

The plaintiff in error was the defendant below in an action of replevin brought by the Philadelphia Lamp Manufacturing Company, the defendant in error, to recover possession of certain tools, dies, etc., owned by it, and which at the time of the issuance of the writ were in the possession of the defendant below.

The assignments of error were three in number and are as follows:

1. That the court erred in ordering stricken from the record all the evidence given in cross-examination bearing upon the lack of warranty for the rescission of the contract then in evidence.

2. That the court erred in refusing to admit in evidence the testimony of George W. Pierson, George L. Bilderback and William W. Alcott, to show that, prior to the date on which the writ of replevin was issued and executed, the defendant had in all respects complied with the contract, and to show that the plaintiff had no legal right or justification to rescind the contract, and to show that the defendant was entitled to have a return of the property so that it might proceed with the manufacture of the lamp burners in compliance with the terms of the contract.

3. That the court erred in directing the jury to return a verdict for the plaintiff.

The facts as disclosed by the record are: That the parties to the action on the twenty-eighth day of September entered into a contract in writing by which "The Delaware Marine Supply Manufacturing Company, the defendant below, was to manufacture and deliver to the Lamp Company, the plaintiff below, 100,000 lamp burners, the same to be in perfect condition as to workmanship and made of materials satisfactory to the Lamp Company." The Supply Manufacturing Company was "to begin the manufacturing of the burners on or before October 15, 1910, and to complete ready for delivery to the said party of the second part (the plaintiff below) or to its order, said burners in perfect condition and ready for delivery to the said party of the second part."

The plaintiff below agreed to and did deliver to the Supply Manufacturing Company "all necessary tools, set forth in the

schedule (attached to the contract) for the manufacturing and assembling of said burners."

After some burners had been delivered to the Lamp Company, that company on the sixteenth day of May, 1911, sent a communication to the Supply Company which was duly received by that company. This communication in part stated:

"We greatly regret that you have utterly failed either to make the lamps properly or to deliver them within the time agreed upon. Having given you repeated notices of what we would be obliged to do, and having given you all the assistance within our power, * * * you are notified that the contract has been, and is hereby rescinded, and you will please bring about the return to us, without delay * * * all tools and property, in your possession belonging to us."

The Supply Manufacturing Company did not return the tools to the Lamp Company as directed, whereupon the Lamp Company had issued out of the Superior Court, a writ of replevin for their recovery.

At the trial below counsel for the defendant below by his cross-examination of the plaintiff's witnesses attempted to show that the Supply Manufacturing Company had fully complied with the terms of the contract, claiming that if such was the case the plaintiff below would not be entitled to a recovery in the action of replevin. The court below first admitting this line of testimony later ordered it stricken out, ruling that under the contract it was immaterial in the present action whether the Lamp Company was or was not justified in rescinding or repudiating the contract.

At the close of the plaintiff's case, the Supply Manufacturing Company proffered evidence to show:

"That prior to the date on which the writ of replevin was issued and executed, the defendant had in all respects complied with the contract and that the plaintiff had no legal right or justification to rescind the contract, and that the defendant was entitled to have a return of the property (taken under the writ) so that it might proceed with the manufacturing of the lamp burners in compliance with the terms of the contract."

The court below held that the testimony proffered was unimportant and immaterial and ruled against its admission.

The question presented to the court below and argued before this court, under the assignments of error, is whether the Lamp

Company after rescinding or repudiating the contract with or without reason, was entitled to the possession of the tools and dies owned by it and placed by the Lamp Company in the possession of the Supply Manufacturing Company, under the terms of the contract to be used by the Supply Company in the manufacturing and assembling of lamp burners.

Counsel for the defendant below concedes that after notice of repudiation of an executory contract, the injured party cannot ordinarily complete the contract, and recover the full contract price, or for any increased damages caused by his continuation to perform.

But counsel contends that this proposition of law pertains alone to the damages the injured party may recover, and that the injured party is not prevented from considering the contract a subsisting one, and proceed with the process of manufacture and complete the contract.

No case in replevin has been cited, nor have we been able to find one, passing upon the question raised in the present case. But the language of the courts in passing upon the question of damages in cases arising out of executory contracts similar to the present one, may have an important bearing upon what the same courts think of the right of the manufacturer to continue after repudiation.

In *Danforth Co. v. Walker*, 37 *Vt.* 239, the court said:

"While a contract is executory a party has the power to stop the performance on the other side, by an explicit direction to that effect by subjecting himself to such damages as will compensate the other party for being stopped in the performance on his part at that point or stage in the execution of the contract. The party thus forbidden cannot afterwards go on and thereby increase the damages of the other party."

In *Kingman & Co. v. Western Mfg. Co.*, 92 *Fed.* 486, 34 *C. C. A.* 489, it was said by the court:

"When on November 22, 1893, the defendant in error received notice from Kingman & Co., that the latter would not accept more implements under the contract, the manufacturing company was bound to refrain from adding to its own loss and that of the plaintiff in error by making the implements it had not commenced to make; and if it did so, it cannot be permitted to recover the increased loss it thus voluntarily incurred."

In *Black v. Woodrow & Richardson*, 39 *Md.* 194, the court used the following language:

"But it is not claimed by plaintiff's counsel that no action could have been maintained on the special contract until fully performed, and the engine delivered or tendered to the defendants; that unqualified refusal of the defendants to take the engine when it should be completed was not a prevention of performance which would authorize the plaintiff to sue upon the contract on that ground. We think it was, and that such absolute refusal is to be considered in the same light, as respects the plaintiff's remedy, as an absolute physical prevention by the defendants."

In *Clark v. Marsiglia*, 1 *Denio* (*N. Y.*) 317, 43 *Am. Dec.* 670, it was said by the court:

"The defendant, by requiring the plaintiff to stop work upon the paintings violated his contract, and thereby incurred a liability to pay such damages as the plaintiff should sustain, Such damages would include a recompense for the labor done and materials used, and such further sum in damages as might, upon legal principle, be assessed for the breach of the contract, but the plaintiff had no right by obstinately persisting in the work to make the penalty upon the defendant greater than it would otherwise have been."

In *Tufts v. Weinfeld*, 88 *Wis.* 652, 60 *N. W.* 992, the court said:

"We fully concur with the trial court in holding in effect that the plaintiff had no legal right, after the defendants had thus notified him that they would not accept the soda water fountain, and countermanded the order, to go on and manufacture and ship the same, for the purpose of holding the defendants for the full contract price, or to increase the damages for the breach. To hold otherwise would practically convert the action for the breach of the contract into an action to enforce the specific performance of the contract."

While the fact remains that the courts in the above cases, and the many more we might cite to the same effect, were passing upon the question of damages, the question then before the courts, the natural and reasonable inference from the language employed, and the effect of the language, is that the injured party to an executory contract to manufacture, similar to the contract in the present case, will not have the right to continue to manufacture the articles contracted for, after the repudiation or rescission of the contract, and an unqualified refusal to accept the manufactured article.

28 Del.] Del. Marine Sup. Mfg. Co. vs. Phila. Lamp Mfg. Co. 529

Opinion.

In *Bishop on Contracts*, § 837, the author says in reference to this question:

"One party alone, with no consent from the other, who is not in default has, at law, the power, not to be exercised without liability for damages, but still the power, to rescind an executory contract."

The same author in *Section* 839 says in referring to the *Marsiglia case* above cited:

"In this case, it is perceived, the party against whom the rescission is wrongfully made, being in possession of the article, has the manual power to carry out the contract; yet the law does not permit him."

In *Mechem on Sales* at *Section* 1091 the author says:

"In respect of these cases, the law is well settled that a party to an executory contract may always stop performance on the other side by an explicit direction to that effect, though he thereby subjects himself to the payment of such damages as will compensate the other for the loss he has sustained by reason of having his performance checked at that stage in its progress.

"The contract is not rescinded, but broken, and while the other party has the right to deem it in force for the purpose of the recovery of his damages, he is under no obligation, for that purpose, to tender complete performance, nor has he the right to unnecessarily enhance the damages by proceeding after the countermand, to finish his undertaking. His remedy will be an action for the breach of the contract, and he is entitled to pursue his remedy at once, the direction of the defendant not to proceed being equivalent for this purpose to an absolute physical prevention by the defendant."

[1-3]  Since it is the law that the injured party to an executory contract to manufacture, similar to the contract under consideration, cannot recover additional damages from the defaulting party by ignoring a rescission or repudiation, that is unequivocal and certain, and proceed with the process of manufacture, we are unable to find any good reason why he should be permitted to perform under the terms of the rescinded or repudiated contract, and it clearly appears to be against good reason and justice and contrary to the principles of the law of damages in such cases to permit him to do so.

In the present case there could be no mistake concerning the terms of the rescission or repudiation of the contract, for the plaintiff below not only informed the defendant below that they rescinded the contract, but they demanded the return of their tools and property in the possession of the Delaware Marine

34

Supply Manufacturing Company, which were necessary in the manufacture and assembling of the lamp burners, several times before the writ of replevin was issued and executed.

We are of the opinion that the contract between the parties was terminated upon its rescission or repudiation by the Lamp Company, except for the purpose of recovery of damages, if any, sustained by the Supply Manufacturing Company, by the alleged breach, and the question of damages for a breach of contract cannot be determined in an action of replevin.

Counsel for the defendant below contends that under the express words in paragraph 13 of the contract he had the right to continue to manufacture the burners notwithstanding the contract had been rescinded or repudiated. We think this contention must fall.

*Paragraph* 13 is as follows:

"It is further mutually agreed between the said parties hereto that in case of failure of the said party of the second part to carry out its contract with the said party of the first part, as herein set forth in taking over and paying for such burners as the said party of the first part shall have manufactured in perfect condition as to workmanship and materials used for it under this contract, said party of the first part shall have the right to sell such burners or any part thereof for the account of the said party of the second part and apply such parts of the proceeds of the sale as may be necessary to pay the expense of sale and the balance due under this contract for the manufacture of such burners as may be completed and ready for delivery, at the expiration of five days from date upon which such payment is due, any balance, however, remaining in the hands of the said party of the first part from such proceeds of sale shall be paid and turned over to the said party of the second part, together with the balance of the burners unsold remaining in the hands of the said party of the first part."

Under the terms of the contract the burners were to be delivered in installments, and if the contract was ended by the rescission or repudiation by the Lamp Company, except for the purposes of damages sustained by the defendant below, the Supply Company could only sell such burners as it had already manufactured in perfect condition, and would not have the right to continue with the process of manufacture.

[4] If therefore the Supply Company had not the right to continue to manufacture the burners after the termination of the contract by the other party, and it appears that the tools and

28 Del.]  DEL. MARINE SUP. MFG. CO. vs. PHILA. LAMP MFG. CO. 531

Opinion—Judgment Affirmed.

other property of the Lamp Company set forth in the schedule were delivered to the Supply Company only to be used in the manufacture of the burners under the contract, it must follow that the Supply Company's right of possession to the tools and other articles set forth in the schedule attached to the contract also terminated.

We are of the opinion that the court below was not in error in striking out the testimony introduced at the trial, nor in refusing to permit the defendant to introduce the proffered testimony to show, that the defendant in error had complied with the terms of the contract and the plaintiff in error was not justified in rescinding or repudiating the contract.

The defendant below did not introduce any evidence at the trial and for the reasons assigned we are clearly of the opinion that under the evidence introduced by the plaintiff below, the Lamp Company was legally entitled to the possession of its property taken under the writ of replevin, and the court below was not in error in directing the jury to return a verdict in favor of the plaintiff below.

The judgment of the court below is affirmed.