## CRAIG vs. HIGGINS
(No. 1103, April 8th, 1924; 224 Pac. 668.)

MINOR'S LIEN—NOTICE REQUIRED—DAMAGES—CONTRACT PRICE NOT RECOVERABLE AFTER OWNER REPUDIATES THE CONTRACT.

1.  While Comp. Stats. 1920 Section 4830 requires a statement in an action to recover a lien, that the contract for labor or materials was made with the owner or one acting under his authority, such statement is not required by Comp. Stats. 1920, Section 4833 in a notice of lien.

2. Where plaintiff in pursuance of contract drilled an oil well to a depth of 100 feet, at which time owner repudiated the contract and became liable for its breach, plaintiff could not thereafter continue to perform and recover the full contract price for work done after the repudiation.

ERROR to District Court, Weston County; HARRY P. ILSLEY, Judge.

Action by Bert Higgins against A. K. Craig and others to foreclose a lien for the drilling of an oil well. There was a judgment for plaintiff and defendants bring error.

*Wakeman & Dolezal, Henry Frawley* and *W. E. Mullen,* for plaintiffs in error.

The Statute, 4830 C. S. provides that a lien must be founded on contract with the owner or lessee, or one acting for him; this is a vital requirement of the lien statement; the lien notice must follow the statute, Barteolet v. Parker, 43 Wis. 551; Malter v. Co. 2 Pac. 50; Mayes v. Ruffner, 8 W. Va. 386; McElwee v. Sanford, 53 How. Pr. 90; the name of the owner must be set forth in the statement, Ruggs v. Hoover, 10 N. W. 473; the statement here does not give the name of the owner, nor state that it is unknown; there is no just or true account of the demand due, as required by statute, Becker v. Hopper, (Wyo.) 138 Pac. 181, nor a description of the property, Davis v. Lumber Co., 85 Pac. 980; a true account is required by the statute, Mitchell Co. v. Allison, 40 S. W. 120; Joyce v. Hoyt, 81 S. W. 468, the name of the owner must be stated, Wyman v. Quayle, (Wyo.) 68 Pac. 988. The Court erred in overruling the objection of plaintiffs in error to its admission, 4830 C. S., there was no contract; the evidence clearly shows that Craig never entered into a contract with Higgins, the Gardner contract was not followed; the verdict is not supported by the evidence; Martin v. Martin, 45 Pac. 813; the verdict is against law, Foreman v. Patterson, 24 Pac. 692; Pierce v. Schaden, 55 Cal. 406; Ireton v. Ireton, 63 Pac. 429; the verdict was merely advisory and should have been set aside; Gartner v. Nohan, 163 N. W. 674; there was no evidence to sustain an

oral contract, Fuller v. Cretian, 117 N. W. 344; Waters v. Waters, 79 N. E. 1037; the verdict is in conflict with the evidence, Woodbury v. Doherty, 143 N. W. 216; Rakowski v. Zimmerman, 149 N. W. 215; Fox v. Nachstein, 29 Pac. 140; there is no evidence to prove any debt, Weaver v. Ry. Co., 45 N. E. 717.

*Raymond & LaFleiche* for defendant in error.

On the argument of the motion for a new trial all questions, except the sufficiency of the evidence to sustain the verdict were waived and cannot be considered now, St. Louis Ry. v. White Co., 93 S. W. 58; Eckes v. Stetler, 90 N. Y. S. 473; Emery v. Vinall, 26 Me. 295; Shoaff v. Funk, (Ill.) 54 N. E. 969; a verdict based upon conflicting evidence will not be disturbed on appeal, City v. Murphy, (Wyo.) 115 Pac. 436; Kimball v. Payne, (Wyo.) 64 Pac. 673; this is the universal rule; no motion was made for a directed verdict at the close of the evidence; there was evidence to support the verdict, it was apparently conceded that defendant in error had produced sufficient evidence to warrant the submission of the case to the jury. An examination of the record will show the verdict to be supported by evidence; the case comes within the rule against disturbing verdicts based upon conflicting evidence, Ferst v. Hall, 33 S. E. 951; A. T. & S. Ry. Co. v. Matthews, 49 Pac. 602; Inhab of Monroe v. Inhab of Hampdon, 49 Atl. 604; Rolide v. Biggs, 66 N. W. 331; Crystal L. Ice Co. v. McCauley, (Cal.) 17 Pac. 924; Nolen v. Heard, 13 S. E. 554; Jerauld v. Watkins, 27 N. E. 872; Stoutenburgh v. Don Gilman Hancock Co. 47 N. W. 1041; Johnson v. Leggett, 28 Kan. 590; Lee v. Huron Indemnity Union, (Mich.) 97 N. W. 709; Steere v. Page (R. I.) 67 Atl. 363; Chattanooga Elec. Ry. Co. v. Finney, 58 S. W. 540; Ins. Co. v. Bell, 60 S. W. 264; Anderson v. McDonald, 71 Pac. 1040; Wilcox v. Ry. Co., 81 Fed. 143; Gallup v. Peck, 24 Ill. 586; Collins v. City, 94 N. W. 309; Marshall v. Rugg, (Wyo.) 44 Pac. 700; plaintiff in error having tried the case upon the theory

that defendant in error began drilling as a trespasser, now contends that defendant worked under a verbal contract, which was terminated after 100 feet had been drilled; this we submit cannot be done; the authorities cited by plaintiffs in error do not sustain their position, when the facts in all of them have been carefully examined, the Wisconsin case of Roakski v. Zimmerman merely recognized the discretion of a trial court to grant a new trial, though there was evidence to sustain the verdict. The jury believed that Higgins made an oral contract with plaintiff in error, Craig and worked under it; plaintiff in error did not realize upon the Gardner contract. The notice of lien is sufficient and complies with Chapter 128, Laws of 1919, compiled as Section 4830 to Sections 4839 Comp. Stats. The lien statement is also in compliance with the Statute.

KIMBALL, Justice.

This is a proceeding in error to review a judgment in favor of the defendant in error (plaintiff below) in an action to recover for the drilling of two oil wells, and to foreclose a lien claimed under the provisions of Chapter 128 of the session laws of 1919, now sections 4830 to 4839, of the Compiled Statutes of 1920.

The only contention is that the verdict and judgment are not sustained by sufficient evidence.

It is argued that the notice of lien was invalid because it did not recite that the work was done under a contract "with the owner, part-owner or lessee" or "the authorized agent of the owner or part-owner or lessee" or "the trustee, agent or receiver of any such owner," as provided by section 4830. It may be conceded that that section gives the right to a lien to those only who have furnished material or done work under a contract with some one who had a right to contract with reference to the property benefited. But the facts necessary to the right to a lien must not be confounded with the facts required to be stated in the notice of lien. Hurlbert vs. New Ulm Basket Works, 47 Minn, 81, 49. N. W. 521. Section 4830 does not purport to prescribe

what the notice of lien shall contain. That is done by section 4833, which provides that "said notice shall in substance set forth the fact that the party furnished such materials or supplies or performed such labor (naming the kind) for a party or company (naming the party or company) ; that such material or supplies or labor was furnished or performed under a contract (stating the substance) ; also, the time when the party commenced and ceased to furnish such materials or supplies or perform such work; the amount still due and unpaid, together with a description of the premises where such materials or supplies were delivered or upon which such labor was performed, * * *." We see no reason for a construction enlarging these requirements. It is not argued that the notice in the case at bar did not state all the facts required by section 4833. Unless the statute requires it, it is not necessary that the notice state that the contract was made with the owner or some one acting under his authority, however important that may be in the action to enforce the lien. Hurlbert vs. New Ulm Basket Works, supra; Moritz vs. Splitt, 55 Wis. 441; 13 N. W. 555; Hauptman vs. Catlin, 20 N. Y. 247; Davies-Henderson Lbr. Co. vs. Gottschalk, 81 Calif. 641; 22 Pac. 860; Post vs. Miles, 7 N. Mex. 317; 34 Pac. 586; Osborn vs. Logus, 28 Ore. 302; 37 Pac. 456, 38 Pac. 190, 42 Pac. 997; Red River Lbr. Co. vs. Friel, 7 N. Dak. 46; 73 N. W. 203; Sorg vs. Crandall, 233 Ill. 79, 84 N. E. 181.

The plaintiff claimed that he drilled the wells under an oral contract made about June 7, 1920 with defendant Craig, who was then the owner of the land on which the wells were drilled. The plaintiff's evidence tended to prove that by this contract he agreed to "drill a well, starting as large a hole as he could and carrying it as far as he could," and that Craig agreed to furnish casing and to pay for the drilling at the rate of $5 per foot. A few days after June 7, the plaintiff moved his drilling rig to the land, commenced drilling, and, by June 21, had drilled to a depth of

100 feet. Craig denied the making of the contract of June 7, and claimed that until June 21 he had no knowledge that plaintiff was drilling on the land in question. The plaintiff and Craig both testified that on June 21 or 22 Craig came to the well where he and plaintiff had a conversation in which Craig declared that plaintiff could not proceed with the work unless he agreed to drill under the terms and conditions of a written contract previously entered into between Craig and defendant, Gardner, for the drilling of two wells in the same locality, and that the plaintiff, who then had some knowledge of the terms of the Gardner contract, emphatically declared that he would not agree to drill in accordance therewith. The plaintiff testified that he then offered to abandon the work if Craig would pay him at the contract rate for the drilling already done, but this Craig refused to do. Craig then left the property and was not there again during the drilling operations, but was represented there by his agent, DeBow. After Craig had left, the plaintiff suspended drilling for a time, and DeBow testified that plaintiff then examined the Gardner contract, and consented to drill under its terms, but requested that Craig be asked to consent to a modification with respect to the time of the first payment for drilling, which under the Gardner contract was to be made when the well had been drilled to a depth of 500 feet. Plaintiff testified that he wrote Craig that he would go ahead under the terms of the Gardner contract if Craig would consent to a modification of this provision as to the time of the first payment. Craig, on receiving either from DeBow or plaintiff notice of this suggested modification, sent the following telegram dated June 22 to DeBow:

"It will be all right for Higgins to drill under same terms and conditions that Gardner is working. Gardner will show you his contract. Go by that and nothing else."

This telegram was showed to plaintiff, and was notice to him that Craig persisted in maintaining the position, an-

nounced in the conversation at the well, that the drilling, if proceeded with, must be done under the terms of the written contract with Gardner. Plaintiff at no time claimed that Craig receded from that position. However, the plaintiff resumed drilling, both Craig and DeBow, according to their testimony, assuming that plaintiff had decided to drill in accordance with the terms of the Gardner contract. The plaintiff at the trial denied that he had ever agreed to those terms, and his case was submitted on the theory that he proceeded with the work under the contract which he claimed was made on June 7. He drilled one hole to the depth of 480 feet when he lost his tools and had to abandon the hole. He then moved his drilling rig about 20 feet and drilled another hole to the depth of 500 feet, the depth at which the first payment was to be made if the Gardner contract was controlling. Craig in the meantime had sold his interest in the property to other defendants. On failure of Craig and his successors in interest to pay anything to plaintiff, he ceased work, filed his lien-notice and later brought this action, which was tried to a jury who returned a verdict for the full amount claimed, i. e., $5 per foot for drilling 980 feet, and the judgment was for that amount, and declaring and foreclosing a lien on the real property on which the wells were drilled.

The plaintiff relied wholly on the contract of June 7. We do not question the right of the jury to find that that contract was made as claimed by plaintiff, and that pursuant thereto he had drilled to the depth of 100 feet without any objection on the part of Craig. A judgment for the contract price for drilling that depth, and for a lien to that extent, could not be disturbed. A more serious question arises as to the sufficiency of the evidence to sustain a judgment for the full contract price for the additional drilling done after June 22. Assuming that the contract of June 7 was made as claimed by plaintiff, it seems to us that Craig, on June 21 or 22, absolutely repudiated it. By his repudiation of the contract, Craig made himself liable for the con-

sequences of a breach, but the plaintiff could not continue to perform and then recover the full contract price for work done after the repudiation. By the great weight of the authorities in this country the controlling rule for such a situation is as stated in section 1298 of Williston on Contracts where, among other things, it is said:

"If a man engages to have work done, and afterwards repudiates his contract before the work has been begun or when it has been only partially done, it is inflicting damage on the defendant without benefit to the plaintiff to allow the latter to insist on proceeding with the contract. The work may be useless to the defendant, and yet he would be forced to pay the full contract price. On the other hand, the plaintiff is interested only in the profit he will make out of the contract. If he receives this it is equally advantageous for him to use his time otherwise."

A few of the many authorities supporting this rule are Clark v. Marsiglia, 1 Denio (N. Y.) 317, 43 Am. Dec. 670 (the leading case); Gibbons v. Bente, 51 Minn. 499; 53 N. W. 756, 22 L. R. A. 80; Heaver v. Lanahan, 74 Md. 493; 22 Atl. 263; Wigent v. Marrs, 130 Mich. 609; 90 N. W. 423; Badger Lbr. Co. v. Jones Lbr. Co., 140 Wis. 73; 121 N. W. 933; Thomas v. Clayton Piano Co., 47 Utah 91; 151 Pac. 543; Delaware Marine Sup. Mfg. Co. v. Phila. Lamp Mfg. Co., 5 Boyce (28 Del.) 524; 95 Atl. 235; Spratt v. Brown-Petzel Lbr. Co., 105 Ore. 672, 210 Pac. 700; 13 C. J. 655-656. The rule is applied to an oil well drilling contract in Osage Oil & Ref. Co. v. Lee Farm Oil Co. (Tex. Civ. App.) 230 S. W. 518.

Under this rule the plaintiff had no right to drill under the contract of June 7 after its repudiation, and unless he consented to resume and continue work under the proposed new or modified contract, he should have ceased work on June 22, and sought satisfaction by an action to recover the contract price for the work already done and damages for the breach in refusing to permit him to continue. Unfor-

tunately, this principle seems never to have been called to the attention of the court during the trial, and for that reason we would feel inclined to affirm the judgment as rendered if we could find that the evidence was sufficient to support it on any theory. But so much of the judgment as exceeds the contract price of the work done before June 22 would require for its support on any theory a finding of facts that were not proved. It is perhaps unnecessary to say that there was no evidence to support the judgment as one for damages for a breach of the contract of June 7. For the work done after June 22 we think the plaintiff must recover, if at all, either under the contract which Craig asserted was made on that date, or on the *quantum meruit,* and evidence necessary to support the judgment on either of those theories is lacking. The plaintiff did not undertake to prove that he performed the terms and conditions of the Gardner contract; the defendants introduced evidence tending to prove that he did not perform them, and the court instructed the jury that the plaintiff could not recover except for work done under the contract of June 7. There was no evidence of value of the work to support a judgment on the *quantum meruit.*

We think a new trial should be had unless the plaintiff be satisfied with a judgment for the contract price for the work done before June 22. Accordingly, the case will be remanded to the district court with instructions to vacate the judgment heretofore rendered and grant a new trial unless the plaintiff elect to consent to a modification reducing the judgment to $500, with interest from June 22, 1920.

POTTER, Ch. J., and BLUME, J., concur.

NOTE—See 13 C. J. p. 656; 27 Cyc. pp. 777 (1925 anno) 780.